865 So.2d 446 (2003)
James A. BECK, Jr.
v.
James A. BECK, Sr., and Susan Beck.
2010402.
Court of Civil Appeals of Alabama.
January 10, 2003.
Rehearing Denied March 21, 2003.
Certiorari Denied May 16, 2003.
Mark E. Johnson, Arab, for appellant.
Dan Warnes, Guntersville, for appellees.
Alabama Supreme Court 1021133.
*447 YATES, Presiding Judge.
James A. Beck, Jr. ("the father"), appeals from the trial court's award of grandparent visitation to his parents, James A. Beck, Sr., and Susan Beck (hereinafter collectively referred to as "the grandparents").
The father and the mother, Lisa Ditto, had one child during their marriage. The child was born in 1993. The father and mother divorced in 1996; they were awarded joint custody and the father was awarded primary physical custody. Subsequently, the father sought and was granted sole custody of the child in 1997.
On September 26, 2000, the grandparents moved to intervene in the divorce proceeding, seeking grandparent visitation. On December 12, 2001, the circuit clerk entered on the case action summary the trial court's judgment awarding grandparent visitation, pursuant to § 30-3-4.1, Ala. Code 1975. However, there was no action pending before the trial court concerning "the custody of a minor child, a divorce proceeding of the parents or a parent of the minor child, or a termination of the parental rights proceeding of either parent of the minor child." § 30-3-4.1(c), Ala. Code 1975. The last modification of custody occurred in 1997. Therefore, the grandparents should have filed an original action for visitation pursuant to § 30-3-4.1(b).
In T.R.S.S. v. R.S., 828 So.2d 327 (Ala. Civ.App.2002), the grandparents did not file an original action under § 30-3-4.1(b), but instead filed a motion to intervene under § 30-3-4.1(c). This court held that the grandparents' motion to intervene was untimely because when they filed it on July 24, 2000, there was no action pending before the court; the final judgment of divorce had been entered on May 26, 2000. This court stated that it was "obvious on the face of the petition that it was not an original action, but instead was an attempt to intervene in the divorce action" as evidenced by the style and pleading of the petition as well as by the reference on the petition to the divorce case number. 828 So.2d at 330.
"Under common law principles, grandparents lacked any legal right to visitation and communication with their grandchildren if such visitation was forbidden by the parents." Ex parte Bronstein, 434 So.2d 780, 782 (Ala.1983). This Court has held that the statutory right to seek grandparent visitation must be strictly construed. Chavers v. Hammac, 568 So.2d 1252 (Ala.Civ.App.1990)(great-grandmother did not have standing to seek visitation under the predecessor act to § 30-3-4.1).
A majority of states have enacted grandparent-visitation statutes. We find instructive Bert v. Bert, 154 Mich.App. 208, 397 N.W.2d 270 (1986). In that case, the mother and father divorced in July 1982. The mother was awarded custody of their daughter, and the father was to have reasonable visitation. In December 1982, the father died. The mother remarried in February 1983 and the mother's new husband adopted the daughter later that same year. In 1983, the paternal grandmother petitioned to intervene in the divorce action. The trial court granted the motion to intervene and entered an order awarding visitation. The Michigan Court of Appeals noted that the trial court's jurisdiction over child custody and visitation matters continues until the parties' child reaches age 18, but that that jurisdiction empowers the court to enter postjudgment child-custody orders only on the petition of either of the parents, and not of a grandparent. That court also noted that the Michigan Legislature had provided for grandparent visitation in its *448 Child Custody Act. That provision set out two methods for obtaining court-ordered grandparent visitation: by intervening in a pending child-custody action or by "commencing an action" if one of the parents is deceased, whether or not a child-custody dispute is pending. 154 Mich.App. at 213, 397 N.W.2d at 273. The appeals court held that the circuit court should have dismissed the petition for intervention for lack of jurisdiction.
In Nation v. Nation, 715 P.2d 198 (Wyo. 1986), the mother and father divorced in 1979. Both parties filed post-divorce motions regarding custody of their children. In 1985, the father filed a petition seeking, among other things, an increase in visitation, and the parental grandparents, also named in the father's petition, sought to establish grandparent-visitation rights. However, the grandparents did not move to intervene. The trial court denied the petition insofar as it related to the father's request for increased visitation, but granted the petition insofar as it sought to establish the grandparent's visitation rights. The Supreme Court of Wyoming held that although an independent action or motion to intervene may be used to seek grandparent-visitation rights, the trial court lacked jurisdiction to enter an order granting a specifically claimed statutory right of visitation on behalf of nonparties to the action where the grandparents failed to file a motion to intervene.
In Alabama, the right to request grandparent visitation does not vest until certain events occur. The Legislature determined that intervention is to be used when a grandparent seeks visitation and there is a pending custody proceeding as set out in § 30-3-4.1(c). Otherwise, in order for a grandparent to seek visitation, an original action must be commenced if one of the parents has died, if the parents' marriage has been dissolved, if the child has been abandoned by a parent, if the child was born out of wedlock, or if the parents are still married but one or both parents have used their parental authority to prohibit a child-grandparent relationship. § 30-3-4.1(b). Here, the grandparents are attempting to intervene as parties in a custody action where no proceeding regarding custody is currently before the court. Therefore, the trial court lacked the authority under § 30-3-4.1 to consider the grandparents' request for visitation.
Even if we construed the grandparents' motion to intervene as an original action, the law regarding grandparent visitation has changed since the trial court issued its order. On January 29, 2002, this court issued a two-judge opinion in L.B.S. v. L.M.S., 826 So.2d 178 (Ala.Civ.App.2002). Judge Thompson, writing the main opinion, in which Judge Pittman concurred, wrote that in order for Alabama's grandparent-visitation statute to be applied constitutionally, a grandparent seeking visitation bears the burden of showing, by clear and convincing evidence, that the best interest of the child is served by awarding grandparent visitation. Judge Thompson wrote that although the factors the trial court should consider in determining whether to allow grandparent visitation set out in § 30-3-4.1(d) do not specifically mention the parent's own determination regarding the child's visitation with the grandparent, the factors do not exclude consideration of that determination as a factor. He concluded that the requirement in § 30-3-4.1(d)(6) that the court consider "other relevant factors" allows the court to give great weight, as it must, to a parent's decision regarding such visitation in determining whether to grant a grandparent visitation.
Judge Murdock, in a special writing, in which Presiding Judge Yates concurred, wrote that before a court may substitute *449 its decision for that of a fit custodial parent as to what, if any, grandparent visitation is in a child's overall best interest, there must be a threshold showing of substantial harm to the child caused by the parent's decision not to allow grandparent visitation. That is, where a child has enjoyed a substantial relationship with the grandparent so that arbitrarily depriving the child of the relationship would cause serious psychological or emotional harm if the requested visitation by the grandparent is not granted, evidence of that harm must be shown, and this showing must be by clear and convincing evidence.
Presiding Judge Yates also wrote specially in L.B.S. v. L.M.S. to summarize the points on which a majority of this court was in agreement:
"[A] majority of this court agrees: (1) that parents have a fundamental right to make decisions regarding the care, custody, and control of their children and because a determination of grandparentvisitation rights directly interferes with a parent's fundamental right to rear his or her children, a strict-scrutiny analysis applies to such an infringement upon a fundamental right; (2) that there is a presumption that a fit parent acts in the best interest of his or her child and that this presumption places on the grandparent petitioning for visitation the burden of showing by clear and convincing evidence that the best interest of the child is served by awarding visitation if substantial harm to the child by not awarding visitation is shown; and (3) that this court should not invalidate the grandparent-visitation statute on constitutional grounds if by reasonable construction, it can be given a field of operation within constitutionally imposed limitations."
826 So.2d at 187 (Yates, P.J., concurring in the judgment of reversal only).
It is unclear whether the trial court in this case concluded that there would be substantial harm to the child if grandparent visitation were denied. Indeed, there appears to be no showing of any harm at all to the child in this particular case because he has never been deprived of contact with the paternal grandparents. Both the father and the stepmother testified that they want the child to continue to visit with the grandparents but that the father disagrees with having set times for visitation.
The child was born in 1993. For approximately six months, the father, the mother, the mother's daughter from a previous marriage, and the child lived with the grandparents because of financial difficulties the father and mother were having. After the father and the mother divorced and the father gained sole custody of the child, the grandparents would pick up the child from kindergarten about once every two weeks and the child would spend the night at the grandparents' house. After the father purchased a new home and was planning to marry his current wife, a conflict arose between the father and the grandparents over the upcoming marriage. Even after the conflict, the father continued to let the child visit the grandparents. Although the frequency of visitation has decreased, this is in large part because the child is now in elementary school and is involved in organized sports and scouting. He now has a stepbrother and a stepsister, and the father wants to build a relationship with the new family. The court ordered that the parties attend counseling while the litigation was pending; they did so until the grandparents felt that the counselor was taking the father's side. The grandparents and another son and his girlfriend live in a house that is very close to the father, and both the father and the *450 stepmother testified that the grandparents are welcome to visit at any time.
Ordering scheduled visitation in a case where the grandparents have never been denied visitation with the child, where there is no indication in the record that the father would deprive his child of a relationship with the grandparents, where the grandmother described her relationship with the child as "normal grandparent involvement," and where the grandparents' time with child has decreased in large part because of the child's and the parent's schedules, goes beyond the constitutionally mandated limits for awarding grandparent visitation.
Based on the foregoing, we reverse the judgment and remand the case for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur in the result.
CRAWLEY, J., dissents.
PITTMAN, Judge, concurring in the result.
As the main opinion correctly notes, the "statutory right to seek grandparent visitation must be strictly construed." In T.R.S.S. v. R.S., 828 So.2d 327 (Ala.Civ. App.2002), the father's parental rights were terminated when the divorce judgment was entered; thus, there could be no "pending action" in which the grandparents could seek to intervene.
In this case, the mother and the father divorced in 1996, and the father gained custody of the child in 1997. Without a pending action before the court when the grandparents sought to intervene in 2000, I agree that the grandparents' petition to intervene was procedurally improper. The grandparents should have instead filed an original action for visitation pursuant to § 30-3-4.1(b), Ala.Code 1975.
That said, I cannot agree with the dicta in the main opinion commenting upon the substantive propriety of visitation in this case. After reviewing the record, I conclude that the trial court carefully reviewed the wishes of the parents and the grandparents, finding that it was "abundantly clear that the grandparents prior to the marriage of their son had much more of a parental involvement with the grandchild than after the marriage" of their son. The trial court concluded that from the time of the child's birth in December 1993 until May 2000 when the father remarried, the grandparents were intimately involved in the child's daily life. The trial court heard testimony from a child psychologist who concluded that a sharp decrease in contact between a child who has had a lifelong association with a set of grandparents and those grandparents can have a detrimental effect on the child.
The trial court issued a lengthy order, citing all six factors listed in § 30-3-4.1(d) as well as the potential harm to the child resulting from loss of regular contact with the grandparents and granting limited grandparent visitation (one overnight visit each month and one telephone call each week). Although the trial court's judgment predates this court's decision in L.B.S. v. L.M.S., 826 So.2d 178 (Ala.Civ. App.2002), that judgment addresses all the factors required by our decision in L.B.S. If the grandparents had filed an original action pursuant to § 30-3-4.1(b), the judgment granting visitation would be due to be affirmed; however, because they improperly sought intervention in an action that had concluded, I must concur in the result reached in the main opinion.
MURDOCK, Judge, concurring in the result.
As discussed in more detail in the opinion of this court in R.S.C. v. J.B.C., 812 *451 So.2d 361 (Ala.Civ.App.2001), and in my special writing in L.B.S. v. L.M.S., 826 So.2d 178, 187 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only), there is a very real difference between requiring a showing of harm, or substantial harm, in the absence of requested grandparent visitation and a showing that such visitation would merely be in the "best interest" of a child. Section 30-3-4.1(b), Ala.Code 1975, requires only a showing that the requested court-ordered grandparent visitation would be in the "best interest" of the child. As a majority of this court agreed in R.S.C., a showing merely of the child's "best interest" is not enough to satisfy the United States Constitution. 812 So.2d at 371.
The right of parents to make decisions concerning the care, custody, and control of their children is fundamental under the United States Constitution. See R.S.C., 812 So.2d at 366 (two judges concurring and Presiding Judge Yates concurring in the result and agreeing that "a parent's right to make decisions regarding his or her child's visitation with a nonparent is a fundamental liberty interest entitled to strict scrutiny under the Fourteenth Amendment," 812 So.2d at 372). Under strict-scrutiny analysis, overriding that fundamental parental right requires, among other things, a showing of a compelling state interest. See id. As indicated in R.S.C., the state does not have a compelling interest in deciding what is merely in the "best interest" of a child. See R.S.C., 812 So.2d at 365-66 n. 1. It does have a compelling state interest in preventing "substantial harm" to children. See L.B.S. v. L.M.S., 826 So.2d at 187, 187 (Yates, P.J., concurring in the judgment of reversal only; Murdock, J., concurring in the judgment of reversal only). Thus, as I wrote in L.B.S.:
"In general, to fall within the more limited class of cases to which I believe [§ 30-3-4.1] constitutionally may be applied, there must be a threshold showing of substantial harm to the child if the requested visitation is not granted, and this showing must be made by clear and convincing evidence."
826 So.2d at 188 (Murdock, J., concurring in the judgment of reversal only). It is only where that threshold showing is made that the statute may constitutionally be applied.[1] In a case where such a threshold showing is made, the statute, by its terms, would then also require a showing by a preponderance of the evidence that the requested visitation would be in the "best interests" of the minor child. See § 30-3-4.1(b) and (d) (listing multiple factors to be considered by a trial court in determining a child's "best interest").
In other words, while § 30-3-4.1 attempts to open the door for courts to impose grandparent visitation against the wishes of a fit parent, the United States Constitution requires that that door be all but closedremaining only slightly ajar for those egregious cases where it is "clear" that "substantial harm" will come to the child absent judicial intervention.[2] *452 It is only in the set of cases that fit within this description, and in which the trial court crafts a visitation scheme that is "the least intrusive means," 826 So.2d at 192, by which to remedy the harm, that a majority of the judges on this court would be of the opinion that the statute could constitutionally be applied. See L.B.S., 826 So.2d at 187, 187 (Yates, P.J., concurring in the judgment of reversal only; Murdock, J., concurring in the judgment of reversal only).[3]
The United States Constitution requires that the courts of this state afford a strong presumption in favor of a fit parent's decisions as to his or her child's associations. Based on my review the record in the present case, I conclude that this is not a case requiring judicial intervention.
CRAWLEY, Judge, dissenting.
I must respectfully dissent from the reversal of the order granting the grandparents visitation in this case. The trial court had no jurisdiction to rule on the grandparents' petition because it was neither an intervention in a pending divorce proceeding nor an independent action. See Bert v. Bert, 154 Mich.App. 208, 397 N.W.2d 270 (1986). Therefore, I would not address the merits; I would instead dismiss the appeal.
NOTES
[1] Strict-scrutiny analysis also requires that a state's "interference with a fundamental right for the purpose of serving a compelling state interest must be done in a manner that is least restrictive of the fundamental right and most closely tailored to serve that compelling state interest." L.B.S., 826 So.2d at 192 (Murdock, J., concurring in the judgment of reversal only) (citing Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), and Beagle v. Beagle, 678 So.2d 1271, 1275 (Fla.1996) (recognizing in the context of a challenge to Florida's grandparent-visitation statute that the statute must meet a compelling state interest "through the use of the least intrusive means")).
[2] This "opening" may, for example, be wide enough to allow the application of § 30-3-4.1 to cases in which a grandparent has served for a significant period as a child's de facto parent, so that depriving the child of a continuing relationship with that grandparent would cause serious psychological or emotional harm to the child. See L.B.S., 826 So.2d at 191-92 n. 8 and accompanying text (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only).
[3] Judge Pittman in his special writing states that the trial court's judgment "addresses all the factors required by our decision in L.B.S." I would note that only two of the judges of this court concurred in the opinion to which Judge Pittman refers. Neither Presiding Judge Yates nor I agreed that § 30-3-4.1 could be constitutionally applied merely on the basis of the multiple "best-interest" factors set out in that statute. To the contrary, Judge Yates and I both wrote separately to indicate that the application of this multiplefactor test under § 30-3-4.1 was inconsistent with our understanding of the United States Constitutional requirement that the fundamental right of a parent to the care, custody, and control of his child could be overridden only in the more limited class of cases where a threshold showing of substantial harm in the absence of the requested visitation could be shown by clear and convincing evidence. Judge Crawley is of the view that there is no set of cases to which § 30-3-4.1 may constitutionally be applied. See L.B.S., 826 So.2d at 199 (Crawley, J., dissenting).