900 So.2d 1223 (2004)
K.S.
v.
H.S.
2021168.
Court of Civil Appeals of Alabama.
June 18, 2004.
Rehearing Denied September 3, 2004.
Certiorari Denied November 12, 2004.
Anna H. Cook of Law Office of Roianne Houlton Conner, Montgomery, for appellant.
Christopher M. Howell and George P. Walthall, Jr., of Law Offices of George P. Walthall, Jr., Prattville, for appellee.
Alabama Supreme Court 1031915.
YATES, Presiding Judge.
K.S., the mother of a minor child, appeals from an order of the Autauga County Juvenile Court granting the child's paternal grandmother, H.S., visitation rights.
On June 12, 2002, the paternal grandmother filed a petition for custody in the Chilton County Juvenile Court, alleging that the child was dependent. The case was subsequently transferred to Autauga County, where the child and the mother reside. The child's father, J.R., filed a motion for a hearing, alleging that he had been denied visitation. On August 5, 2002, the father and the paternal grandparents absconded with the child during visitation at a Taco Bell fast-food restaurant and refused to return him to the mother. The same day, the mother filed an emergency motion seeking to return the child to her custody, and the trial court ordered that temporary custody be granted to the mother. On October 8, 2002, the parties reached an agreement whereby the mother would have custody of the child and the father would have visitation rights.
On December 4, 2002, the father filed an emergency motion for temporary custody, alleging abuse of the child by the mother. On December 5, 2002, an order was issued granting the father temporary custody of the child. On December 17, 2002, an order was entered allowing the mother and the father to exchange custody of the child on a weekly basis until the court ordered otherwise. On January 1, 2003, the father was killed in an automobile accident.
*1224 On January 7, 2003, the mother filed a motion to dismiss both the father's and the paternal grandmother's petitions. On February 13, the paternal grandmother filed a motion to establish visitation, pursuant to § 30-3-4.1, Ala.Code 1975.[1] On April 9, 2003, the trial court held a hearing. According to the mother, the trial court found that the paternal grandmother should be granted visitation, but it did not set out specific dates or times for such visitation. However, no transcript from that hearing was included in the record. On April 23, 2003, the paternal grandmother filed a motion for contempt and requested an emergency hearing. The mother's counsel then withdrew, and the mother subsequently obtained new counsel. On May 5, 2003, the trial court entered the following order:
"This matter coming before the Court the 9th day of April, 2003 for hearing on the Petition for Custody, Motion for Visitation and Motion to Dismiss; the Paternal Grandmother, her attorney of record, the Biological Mother, her attorney of record; and the Guardian Ad Litem, all being present: This Honorable Court finds that it would be in the best interest of the minor child to be temporarily placed in the physical custody of the Biological Mother, until such time as this Court can hear the evidence and determine permanent physical custody and visitation.
"It is further Ordered, Adjudged and Decreed as follows:
"1. The Paternal Grandmother, shall have visitation with the minor child each Saturday from 8:00 a.m. until 6:00 p.m. of every weekend until further Order of the Court of if the parties agree this can be swapped to Sunday of each weekend.
"2. The Paternal Grandmother, shall be responsible for picking up the minor child for said visitation and the Biological Mother shall be responsible for ... picking up the minor child at the end of said visitation.
"3. The parties may agree upon any additional visitation and the location of said additional visitation between themselves."[2]
(Identifying names omitted.)
On August 20, 2003, the trial court held a hearing on the mother's motion to dismiss and on the paternal grandmother's motion for visitation. At the hearing, the paternal grandmother withdrew her petition for custody.[3] On August 26, 2003, the trial court entered an order granting the paternal grandmother extensive visitation. *1225 The mother appeals, arguing that the paternal grandmother failed to meet the standard set out in L.B.S. v. L.M.S., 826 So.2d 178 (Ala.Civ.App.2002), for the constitutional application of § 30-3-4.1.
Although there is a transcript of the hearing held on August 20, 2003, there was no sworn testimony taken at that hearing. No other transcript from any of the other hearings was included in the record. It is clear from the August 20, 2003, hearing that the trial court had already determined that the paternal grandmother was entitled to visitation and that the discussion at the hearing was related to the terms of her visitation. The trial court's final order, entered on August 26, 2003, states "having heard testimony," and over the objection of the mother, visitation is awarded to the grandmother.
As both parties recognize in their briefs, the trial court's judgment was rendered upon ore tenus testimony. Because no transcript of that testimony or authorized substitute therefor is contained in the record, we must conclude that the trial court's judgment was supported by the ore tenus testimony. Tucker v. Tucker, 623 So.2d 342 (Ala.Civ.App.1993); Evans v. Evans, 504 So.2d 318 (Ala.Civ.App.1987). "When oral testimony is considered by the trial court in reaching its judgment and that testimony is not present in the record as either a transcript or Rule 10(d), [Ala.] R. [App.] P., statement, it must be conclusively presumed that the testimony [was] sufficient to support the judgment." Rudolph v. Rudolph, 586 So.2d 929, 930 (Ala. Civ.App.1991). Because we cannot discern from the record whether the trial court erred in granting grandparent visitation, we must affirm the judgment of the trial court.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY and MURDOCK, JJ., dissent, with writings.
CRAWLEY, Judge, dissenting,
As I have previously written, see R.S.C. v. J.B.C., 812 So.2d 361, 373 (Ala.Civ.App.2001)(Crawley, J., concurring in the result), I am of the opinion that § 30-3-4.1, Ala.Code 1975, "is per se, or facially, unconstitutional." Accordingly, I do not share the opinion that the ore tenus evidence that was presented to the trial court may have been sufficient to grant the paternal grandmother visitation rights. For that reason, I respectfully dissent.
MURDOCK, Judge, dissenting.
The child at issue in this case is only three years old. The trial court's judgment removes this very young child from the home of his mother for a period of three months every summer, making, for a child this age, what amounts to a change of "custody" every three to nine months. It is difficult for me to imagine any set of facts that would justify the frequent changes of custody and the inherently disruptive effects that will result from the trial court's judgment. Our law firmly embraces the premise, which I believe is especially applicable to young children, that frequent disruptions in the custody of children should be avoided. See, e.g., Ex parte McLendon, 455 So.2d 863 (Ala.1984). See also L.B.S. v. L.M.S., 826 So.2d 178, 192, 199 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only) (opining that court-ordered grandparent visitation should be narrowly tailored to serve the compelling state interest of avoiding substantial harm that would occur to the child absent the court-ordered visitation).
*1226 The majority opinion notes that the record contains no transcript from the April 9, 2003, hearing and therefore posits that we must assume that the evidence presented at that hearing supports the trial court's final judgment dated August 26, 2003. Based upon the trial court's May 5, 2003, order, however, it does not appear to me that any evidence was presented at the April 9, 2003, hearing. The trial court's May 5 order begins as follows:
"This matter coming before the Court the 9th day of April, 2003 for hearing on the Petition for Custody, Motion for Visitation and Motion to Dismiss; the Paternal Grandmother, and her attorney of record, the Biological Mother, her attorney of Record, and the Guardian Ad Litem, all being present: This Honorable Court finds that it would be in the best interest of the minor child to be temporarily placed in the physical custody of the Biological Mother until such time as this Court can hear the evidence and determine permanent physical custody and visitation.
"It is further Ordered, Adjudged and Decreed as follows:
"1. The Paternal Grandmother shall have visitation with the minor child each Saturday from 8:00 a.m. until 6:00 p.m. of every weekend until further Order of the Court or if the parties agree this can be swapped to Sunday of each weekend."
(Emphasis added; identifying names omitted.) Therefore, insofar as the duration and timing of the court-ordered visitation by the grandmother, I cannot agree that we have no alternative but to affirm that aspect of the trial court's judgment, and I would not do so.
More fundamentally, however, the mother also cites the United States Supreme Court's decision in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and this court's decisions in R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001), L.B.S. v. L.M.S., 826 So.2d 178, and Beck v. Beck, 865 So.2d 446 (Ala.Civ.App.2003), and argues that "[i]t is unclear whether the trial court in the instant case concluded that there would be substantial harm to the child if grandparent visitation were denied." In L.B.S., four members of this court determined that the grandparent-visitation statute at issue, § 30-3-4.1, Ala. Code 1975, could, consistent with the fundamental constitutional right of parents to the care, custody, and control of their own children, be applied to allow the courts of this state to award visitation where there is clear and convincing evidence that, in the absence of the court-ordered visitation, substantial harm would occur to the child and the visitation is narrowly tailored to remedy the substantial harm that would occur in its absence. See L.B.S., 826 So.2d at 187-99 (Yates, P.J., and Murdock, J., concurring in the judgment of reversal only).[4]
The mother's argument is well taken; it is at best unclear whether the trial court applied the standard required by the writings of this court in L.B.S. From my reading of the record and the various orders entered by the trial court, it does not appear that the trial court applied anything *1227 other than a "best interest" standard. Furthermore, a statement made by the paternal grandmother at the August 20, 2003, hearing is consistent with the notion that the trial court decided the visitation issue based merely upon what it considered would be in the child's best interest:
"THE GRANDMOTHER: Yes, sir. I'm just worried about the welfare of my grandson.
"THE COURT: Right.
"THE GRANDMOTHER: Right now, I don't think it's in the best interest of my grandbaby.

"I don't want to hurt her [the mother]. I don't want to put her down. She's a good kid. I don't want to take her child away from her. She's his mother.
"But I don't want him taken out of my life either. If I can't see him but, you know, two or three days every four or five months, let me be the one that hurts, not him. Because I got to see him after about four and a half months, he didn't remember me. He cried. It tore my heart out. I don't want to hurt him like that."
(Emphasis added.) Accordingly, I conclude that the doubt raised by the record as to whether the trial court applied the correct legal standard in making its determination to award visitation to the paternal grandmother also warrants reversal of the trial court's judgment.
I would reverse the trial court's judgment and remand this cause for the entry of an order by the trial court clearly applying the "substantial harm" standard set out in my writing in L.B.S. See also L.B.S., 826 So.2d at 187 (Yates, P.J., concurring in the judgment of reversal only) ("[T]he effect of this court's decision will be to bar application of the statute to any class of cases beyond those described in Judge Murdock's writing."). Specifically, I would instruct the trial court to determine whether the paternal grandmother has demonstrated, by clear and convincing evidence, that "the net effect of the court's substituting its decision for that of the parent's will be to prevent substantial harm to the child," see L.B.S., 826 So.2d at 192 (Murdock, J., concurring in the judgment of reversal only), and whether the visitation it would order is narrowly tailored in its timing, type, and duration so as to be limited to that which is reasonably necessary to prevent the substantial harm that justifies the court's intervention in the first place, see L.B.S., 826 So.2d at 192, 199 (Murdock, J., concurring in the judgment of reversal only). Further, given the uncertainty resulting from the meager record in this case, and in order to avoid further uncertainty in the event that the trial court's judgment on remand results in a subsequent appeal to this court, I would instruct the trial court to make the aforesaid findings in a written judgment in which it explains the basis for those findings.
NOTES
[1] We note that because the child was "otherwise before the [juvenile] court" on the dependency petition, the juvenile court had jurisdiction to address the issue of grandparent visitation. See Ex parte K.L.P., 868 So.2d 454, 456 (Ala.Civ.App.2003).
[2] We disagree with Judge Murdock's contention that any of the trial court's orders indicate that the trial court used the best-interest standard in determining whether the grandmother was entitled to visitation. We note that the May 5, 2003, order applied the best interest standard in relation to placing temporary physical custody with the mother.
[3] Judge Murdock's dissent quotes a portion of the hearing held on August 20, 2003, in an attempt to support his contention that the trial court used an improper standard in determining whether the paternal grandmother was entitled to visitation. It is clear from the transcript of that hearing that the trial court had already determined that the paternal grandmother was entitled to visitation and that the parties were attempting to determine when visitation would occur. Immediately after the colloquy quoted by Judge Murdock, the following occurred:

"The Court: Okay. So you're asking for more visitation
"The Grandmother: Yes, sir.
"The Court:than what you've had? Okay."
[4] The four judges who opined that a visitation award could be upheld if the described standard is satisfied were Presiding Judge Yates, this judge, Judge Thompson, who authored the main opinion, and Judge Pittman, who concurred in the main opinion. Judge Thompson, joined by Judge Pittman, explained in the main opinion in L.B.S. that he would uphold orders providing for grandparent visitation in a larger universe of cases than would Presiding Judge Yates and Judge Murdock. Among other things, Judge Thompson opined that it is not always necessary to make a showing of substantial harm in order to justify an award of grandparent visitation. See L.B.S., 826 So.2d at 186-87 n. 5.