MURDOCK, Judge,
dissenting.
The child at issue in this case is only three years old. The trial court’s judgment removes this very young child from the home of his mother for a period of three months every summer, making, for a child this age, what amounts to a change of “custody” every three to nine months. It is difficult for me to imagine any set of facts that would justify the frequent changes of custody and the inherently disruptive effects that will result from the trial court’s judgment. Our law firmly embraces the premise, which I believe is especially applicable to young children, that frequent disruptions in the custody of children should be avoided. See, e.g., Ex parte McLendon, 455 So.2d 863 (Ala.1984). See also L.B.S. v. L.M.S., 826 So.2d 178, 192, 199 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only) (opining that court-ordered grandparent visitation should be narrowly tailored to serve the compelling state interest of avoiding substantial harm that would occur to the child absent the court-ordered visitation).
*1226 The majority opinion notes that the record contains no transcript from the April 9, 2003, hearing and therefore posits that we must assume that the evidence presented at that hearing supports the trial court’s final judgment dated August 26, 2003. Based upon the trial court’s May 5, 2003, order, however, it does not appear to me that any evidence was presented at the April 9, 2003, hearing. The trial court’s May 5 order begins as follows:
“This matter coming before the Court the 9th day of April, 2003 for hearing on the Petition for Custody, Motion for Visitation and Motion to Dismiss; the Paternal Grandmother, and her attorney of record, the Biological Mother, her attorney of Record, and the Guardian Ad Litem, all being present: This Honorable Court finds that it would be in the best interest of the minor child to be temporarily placed in the physical custody of the Biological Mother until such time as this Court can hear the evidence and determine permanent physical custody and visitation.
“It is further Ordered, Adjudged and Decreed as follows:
“1. The Paternal Grandmother shall have visitation with the minor child each Saturday from 8:00 a.m. until 6:00 p.m. of every weekend until further Order of the Court or if the parties agree this can be swapped to Sunday of each weekend.”
(Emphasis added; identifying names omitted.) Therefore, insofar as the duration and timing of the court-ordered visitation by the grandmother, I cannot agree that we have no alternative but to affirm that aspect of the trial court’s judgment, and I would not do so.
More fundamentally, however, the mother also cites the United States Supreme Court’s decision in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and this court’s decisions in R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001), L.B.S. v. L.M.S., 826 So.2d 178, and Beck v. Beck, 865 So.2d 446 (Ala.Civ.App.2003), and argues that “[i]t is unclear whether the trial court in the instant case concluded that there would be substantial harm to the child if grandparent visitation were denied.” In L.B.S., four members of this court determined that the grandparent-visitation statute at issue, § 30-3-4.1, Ala. Code 1975, could, consistent with the fundamental constitutional right of parents to the care, custody, and control of their own children, be applied to allow the courts of this state to award visitation where there is clear and convincing evidence that, in the absence of the court-ordered visitation, substantial harm would occur to the child and the visitation is narrowly tailored to remedy the substantial harm that would occur in its absence. See L.B.S., 826 So.2d at 187-99 (Yates, P.J., and Murdock, J., concurring in the judgment of reversal only).[4]
The mother’s argument is well taken; it is at best unclear whether the trial court applied the standard required by the writings of this court in L.B.S. From my reading of the record and the various orders entered by the trial court, it does not appear that the trial court applied any *1227 thing other than a “best interest” standard. Furthermore, a statement made by the paternal grandmother at the August 20, 2003, hearing is consistent with the notion that the trial court decided the visitation issue based merely upon what it considered would be in the child’s best interest:
“THE GRANDMOTHER: Yes, sir. I’m just worried about the welfare of my grandson.
“THE COURT: Right.
“THE GRANDMOTHER: Right now, I don’t think it’s in the best interest of my grandbaby.
“I don’t want to hurt her [the mother], I don’t want to put her down. She’s a good kid. I don’t want to take her child away from her. She’s his mother.
“But I don’t want him taken out of my life either. If I can’t see him but, you know, two or three days every four or five months, let me be the one that hurts, not him. Because I got to see him after about four and a half months, he didn’t remember me. He cried. It tore my heart out. I don’t want to hurt him like that.”
(Emphasis added.) Accordingly, I conclude that the doubt raised by the record as to whether the trial court applied the correct legal standard in making its determination to award visitation to the paternal grandmother also warrants reversal of the trial court’s judgment. •
I would reverse the trial court’s judgment and remand this cause for the entry of an order by the trial court clearly applying the “substantial harm” standard set out in my writing in L.B.S. See also L.B.S., 826 So.2d at 187 (Yates, P.J., concurring in the judgment of reversal only) (“[T]he effect of this court’s decision will be to bar application of the statute to any class of cases beyond those described in Judge Murdock’s writing.”). Specifically, I would instruct the trial court to determine whether the paternal grandmother has demonstrated, by clear and convincing evidence, that “the net effect of the court’s substituting its decision for that of the parent’s will be to prevent substantial harm to the child,” see L.B.S., 826 So.2d at 192 (Murdock, J., concurring in the judgment of reversal only), and whether the visitation it would order is narrowly tailored in its timing, type, and duration so as to be limited to that which is reasonably necessary to prevent the substantial harm that justifies the court’s intervention in the first place, see L.B.S., 826 So.2d at 192, 199 (Murdock, J., concurring in the judgment of reversal only). Further, given the uncertainty resulting from the meager record in this case, and in order to avoid further uncertainty in the event that the trial court’s judgment on remand results in a subsequent appeal to this court, I would instruct the trial court to make the aforesaid findings in a written judgment in which it explains the basis for those findings.

. The four judges who opined that a visitation award could be upheld if the described standard is satisfied were Presiding Judge Yates, this judge, Judge Thompson, who authored the main opinion, and Judge Pittman, who concurred in the main opinion. Judge Thompson, joined by Judge Pittman, explained in the main opinion in L.B.S. that he would uphold orders providing for grandparent visitation in a larger universe of oases than would Presiding Judge Yates and Judge Murdock. Among other things, Judge Thompson opined that it is not always necessary to make a showing of substantial harm in order to justify an award of grandparent visitation. See L.B.S., 826 So.2d at 186-87 n. 5.