801 So.2d 12 (2000)
B E & K, INC.
v.
Grover Cleveland WEAVER, Jr.
2990423.
Court of Civil Appeals of Alabama.
September 22, 2000.
Rehearing Denied December 1, 2000.
Certiorari Quashed April 27, 2001.
*14 Jeffrey B. Carr and Charles F. Carr of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Daphne, for appellant.
John C. Brutkiewicz and D.E. "Skip" Brutkiewicz, Jr., of Brutkiewicz Attorneys, Mobile, for appellee.
Alabama Supreme Court 1000527.
YATES, Judge.
These parties have previously been before this court. See B E & K, Inc. v. Weaver, 743 So.2d 476 (Ala.Civ.App.1999).
Grover Cleveland Weaver, Jr., sued his employer, B E & K, Inc., for workers' compensation benefits. By agreement of the parties, the trial court tried only the issue of compensability of Weaver's alleged injuries. Following an ore tenus proceeding, the court, on October 29, 1998, entered findings of fact, conclusions of law, and a judgment, stating, in part:
"The employer is liable for the employee's present injury. The court orders that the employer is to pay to the employee weekly benefits at the employee's compensation rate continuously until further ordered by this court."
B E & K appealed the judgment, arguing, among other things, that the court had applied the wrong evidentiary standard in reaching its determination. We agreed and reversed the judgment and remanded the case for the trial court to apply the appropriate standard of proof. Id. Upon remand, the trial court reconsidered the evidence and applied the appropriate standard of proof and, on December 9, 1999, it entered an order finding that Weaver had proven by clear and convincing evidence that B E & K was liable for his injuries.[1] B E & K appeals.
This case is governed by the 1992 Workers' Compensation Act. This Act provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably *15 infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
On June 5, 1990, Weaver was involved in an automobile accident in which he sustained injuries to his back. A CT scan revealed a comminuted fracture of the L4 vertebral body, a displaced L4 right posterior lamina fracture, and a diastatic left facet joint with displacement of bone fragments into the thecal sac. The fractures were associated with a 30% reduction or stenosis of the spinal canal diameter. The CT scan also revealed fractures of the L3 and L2 transverse processes on the left side. Dr. Russell Hudgens discharged Weaver from the hospital on June 11, 1990, with a primary diagnosis of a L4 burst fracture and fractures of the left transverse process of the L2 and L3 vertebrae. Dr. Hudgens noted that Weaver had approximately 30% stenosis of the spinal canal and that the remaining lumbar vertebrae were stable. Weaver was fitted for a brace and was referred to physical therapy. He did not have surgery.
Weaver testified that for approximately a year and one-half after the automobile accident he had a great deal of trouble with his back and that he had continued since that time to have some back problems "off and on." He was incarcerated in October 1991 and served approximately 23 months in a federal penitentiary for drug trafficking. On September 3, 1993, Weaver began serving a term of supervised release; however, in December 1995 Weaver violated the terms of his supervised release by possessing drugs and a firearm, and, in February 1995, was sentenced to serve another 15 months in the federal penitentiary; he was released in May 1996.
Weaver testified that after being released from the penitentiary he worked at Davis International. He testified that his job duties included expediting materials and "pulling" wire and that the work was heavy and required a great deal of climbing. He said that he had been employed at Davis for approximately 10 months and that he had not experienced any type of debilitating pain while working there. Weaver testified that his next job was with Taylor Services as a heavy equipment operator for approximately seven weeks. He stated that the work was heavy and that he had experienced no problems with his back while employed there.
Weaver was next employed by B E & K. He completed an employment application with B E & K on June 3, 1997, which contained certain questions relating to his medical history. Specifically, Weaver was asked on the application whether he had a history of: (1) back or neck problems, pain, or stiffness; (2) back or neck injuries; and (3) back or neck surgeries or other treatments. He answered each question in the negative. It is undisputed, and Weaver freely admits, that at the time he completed the application he knowingly gave false answers to these questions.[2] He passed a physical examination before beginning his employment with B E & K.
Weaver initially worked in the "bolt trailer," issuing bolts; however, he eventually was transferred to the "laydown" *16 yard, where his duties involved loading and unloading pipe of various sizes from flatbed trucks and stacking it in the yard. He testified that the pipe would be unloaded from the truck using a crane and would be stacked on various dunnage, including four-by-fours, crossties, and two-by-fours. He estimated the weight of the crossties to be 200 pounds each. He stated that the dunnage would have to be moved manually, sometimes by having to flip it end over end. The job also required lifting and toting inch-and-a-half angle iron. In sum, Weaver testified that the job was repetitive in nature and that it required varying degrees of lifting, bending, squatting, and climbing.
Judy Powell, Weaver's supervisor, testified that a hydraulic crane was used to load and unload the pipe and that the job required only light lifting. Powell also testified that B E & K had a policy that required an employee to obtain assistance in lifting objects weighing over 50 pounds. Andy Timothy, a fellow employee of Weaver's at B E & K, testified that a hydraulic crane was used to do the heavy lifting and that the job did not require an employee to do any heavy lifting.
Weaver testified that he had been working in the "laydown" yard for approximately 5 to 10 days when he began experiencing pain in his back. He stated that his back was "sore" for a couple of days after working in the "laydown" yard and that it began to "seize up" on him on Friday, July 25, 1997. He was to report to work Saturday, July 26; however, he stated that on that day he could not get out of bed. He testified that he eventually went to work that day, reported his injury to Powell, and then returned home. Powell testified that Weaver had informed her that his back was hurting and she said she asked if he needed to go to the first aid station. Powell stated that Weaver responded by saying he did not need first aid and that he had not injured his back on the job. Powell testified that Weaver told her he had "had a bad car wreck a couple of years earlier." Timothy also testified that Weaver had told him that he had injured his back, but that Weaver did not know if he injured it on the job or not. Timothy stated that Weaver told him that he had previously injured his back in an automobile accident. Weaver testified that he had assumed that his July 1997 back injury was an exacerbation or a reinjury of his 1990 back injury sustained in the automobile accident, until he learned otherwise from his treating physicians.
Weaver was treated by a number of physicians following his injury. He was seen by Dr. James West on July 29, 1997, complaining of back pain that radiated down both legs. He related a history of lifting pipe, four-by-fours, and angle iron at work when he began experiencing pain in his back. He also informed Dr. West of the 1990 automobile accident. X-rays revealed evidence of the 1990 injury to the spine with a spontaneous fusion of the L3 and L4 vertebrae. Dr. West placed Weaver on light-duty work, with no bending, stooping, or lifting. Weaver returned to Dr. West on August 19, 1997, complaining of an increase in the pain that radiated down each leg. Dr. West ordered an MRI, which revealed on August 28, 1997, a large herniated disc at the L4-5 vertebrae that almost filled the spinal canal and resulted in extensive nerve-root impingement on the left side; a herniated disc at the L5-S1 vertebrae with nerve-root impingement on the left side; a narrowing of the disc space at the L3-4, which was associated with the lateral bulging of the disc material, resulting in an impingement on the right side; and spinal stenosis at the L4-5 vertebrae secondary to the large disc herniation.
*17 Weaver continued to be seen by Dr. West, with continued complaints of pain in his back that radiated into both legs. Dr. West recommended surgery, which Weaver decided against; instead, he was treated with epidural blocks. On December 12, 1997, Dr. West determined that if Weaver did not undergo surgery then he had reached maximum medical improvement.
Because of the persistent pain in his back and legs, Weaver was given a panel of four physicians, from which he chose Dr. Herbert V. Allen III, an orthopedic surgeon. Weaver was first seen by Dr. Allen on January 26, 1998; he was complaining of lower-back pain that radiated into both legs, urinary incontinence, and numbness in the peroneal area, which negated his ability to achieve an erection. Dr. Allen reviewed Weaver's medical records and noted the injury Weaver had sustained as a result of the 1990 automobile accident. Dr. Allen reviewed Weaver's X-rays and MRI and noted that as a result of the previous injury, the L3 vertebral body had fused to the L4 vertebral body and that the spinal canal was normal at this level with no significant stenosis. Dr. Allen stated that Weaver's current injury is a herniated disc between the L4 and L5 vertebrae and a herniated disc between the L5 and S1 vertebrae and that the earlier fracture of the L4 vertebrae and subsequent fusion to the L3 vertebrae is unrelated and not a significant contributing factor to his current injury. Dr. Allen testified that Weaver's current injury is a new injury located below the prior injury and that it resulted from his repetitive bending, stooping, and lifting over a period of several days while employed at B E & K. Dr. Allen further stated that Weaver would have been unable to perform his job duties at B E & K had he suffered from the herniated discs at the L4-5 and L5-S1 levels before his employment with B E & K.
Dr. Allen recommended that Weaver undergo surgery to repair the herniated discs. Weaver had not yet undergone surgery because his diabetes was out of control. Dr. Allen stated that he strongly urged surgery for Weaver and that Weaver's prognosis would be good following surgery.
Weaver was examined by Dr. Robert Lane Ross III, an occupational medicine specialist, on April 22, 1998. Weaver complained of shooting pains in his lower back and buttocks that radiated into both legs. He also complained of intermittent groin numbness, urinary retention, and the intermittent inability to achieve an erection. Dr. Ross reviewed Weaver's medical records and noted the compression fracture at the L4 vertebrae and the fractures of the transverse process of the L2 and L3 vertebrae. Dr. Ross also noted a 30% stenosis or narrowing of the spinal column at the L4 level. He also noted the large disc herniation at the L4-5 vertebrae and the smaller disc herniation at L5-S1 vertebrae, which was indicated by the MRI taken in August 1997.
Dr. Ross testified that the L4 vertebral body was crushed and the L3 disc above it was severely damaged in the 1990 automobile accident. Dr. Ross stated that it could be expected that the L5 disc below it was also damaged. Dr. Ross concluded that Weaver's injuries sustained in the automobile accident in 1990 were significant and that they directly contributed to the injuries Weaver had suffered in July 1997 at B E & K.
Weaver testified that since his injury at B E & K he experiences sharp pain in his back and legs and has difficulty with his bladder and in achieving erections. He stated that before he was employed with B E & K he never had experienced bladder *18 problems, sexual dysfunction, or the debilitating pain that he currently experiences.
B E & K argues that the court erred in concluding that Weaver had proved by clear and convincing evidence that his injury arose out of and in the course of his employment with B E & K. Weaver contends that his injuries resulted from his continuous and repetitive lifting over a period of 5 to 10 days while he was employed with B E & K. For an injury to be compensable, it must be "caused by an accident arising out of and in the course of the employee's employment. § 25-5-51, Ala.Code 1975. The phrase "arising out of an employee's employment requires a causal connection between the injury and the employment. Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App. 1993). The phrase "in the course of the employee's employment" refers to the time, place, and circumstances under which the accident occurred. Id. To establish causation in a workers' compensation case where the injury is nonaccidental, i.e., where the injury was not caused by some sudden and unexpected external event, an employee must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation. Ex parte Trinity Indus., Inc., supra. See also City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975). To prove "legal causation," one need only establish that "the performance of his or her duties as an employee exposed him or her to a `danger or risk materially in excess' of that to which people are normally exposed in their everyday lives." Ex parte Trinity Indus., Inc., 680 So.2d at 267, quoting Howard, 55 Ala.App. at 705, 318 So.2d at 732. To establish medical causation, a claimant "must produce substantial evidence tending to show that the exposure to risk or danger proven in step one of the Howard test `was in fact [a] contributing cause of the injury' for which benefits are sought." Ex parte Trinity Indus., Inc., 680 So.2d at 269, quoting Howard, 55 Ala. App. at 706, 318 So.2d at 732. Additionally, because Weaver alleges that his injuries resulted from cumulative physical stress, i.e., continuous and repetitive lifting over a period of 5 to 10 days, in order for his injuries to be compensable he must prove by clear and convincing evidence that his injuries arose out of and in the course of his employment with B E & K. § 25-5-81(c), Ala.Code 1975; B E & K, Inc, supra, at 481.
The evidence indicates that Weaver's job duties in the "laydown" yard involved the repetitive lifting of four-by-fours and crossties. The job duties also required varying degrees of bending, squatting, and climbing. He had been working in the "laydown" yard for approximately 5 to 10 days when he began to experience back pain. The pain gradually increased to the point that it was difficult for him to get out of bed. Subsequently, he was diagnosed with a large disc herniation at the L4-5 vertebrae and a smaller disc herniation at the L5-S1 vertebrae. The presence of the disc herniations at the L4-5 and L5-S1 levels is undisputed. Dr. Allen testified that the herniated discs at the L4-5 and L5-S1 levels is a new injury that is located below the 1990 injury, and that it is causally related to Weaver's employment with B E & K. The trial court found Dr. Allen's testimony to be credible and adopted his findings and opinions. Accordingly, we conclude that Weaver proved by clear and convincing evidence that his injury arose out of and in the course of his employment with B E & K.
B E & K next argues that Weaver is barred from receiving workers' compensation benefits pursuant to § 25-5-51 because he knowingly and falsely misrepresented *19 the fact that he had a prior back injury. Section 25-5-51, Ala.Code 1975, provides, in part:
"No compensation shall be allowed if, at the time of or in the course of entering into employment ... the employee knowingly and falsely misrepresents in writing his or her physical or mental condition and the condition is aggravated or reinjured in an accident arising out of and in the course of his or her employment."
An employee who makes false statements about his physical condition in an employment application will be prohibited from receiving workers' compensation benefits if (1) the employee knowingly and willfully makes a false representation as to his physical condition; (2) the employer relies upon the false representation and this reliance is a substantial factor in the hiring of the employee; and (3) there is a causal connection between the false representation and the injury. Ex parte Southern Energy Homes Inc., 603 So.2d 1036 (Ala. 1992). For a court to determine that a causal connection exists between the misrepresentation and the injury, the evidence must demonstrate (1) that the employee's disability resulted from a reasonably foreseeable accident or job-related activity that in and of itself, in the absence of a preexisting condition, would not have caused the employee to become disabled, and (2) that the employee's preexisting condition substantially increased the risk that the employee would become disabled from a reasonably foreseeable accident or job-related activity. Id.; see also Logan v. Vernon Milling Co., 668 So.2d 865 (Ala.Civ.App. 1995). The burden is upon the employer to prove each of these elements of the defense. Id.
The evidence clearly establishes that Weaver knowingly misrepresented the existence of his prior back injury and that B E & K relied upon this misrepresentation in hiring him; therefore, we focus our inquiry on the element of causation. As noted above, Dr. Ross testified that Weaver's injuries sustained in the 1990 automobile accident were significant and that they directly contributed to the injuries Weaver sustained during the course of his employment with B E & K. Dr. Ross also testified that, based on Weaver's history of repeatedly lifting items over the course of a 5 to 10 day period, he thought Weaver "probably" would not have suffered the injuries at B E & K had it not been for the injuries he had suffered in the 1990 automobile accident.
As noted above, Dr. Allen testified that Weaver's current injuries are new and are unrelated to his prior injuries, and that the prior injuries did not contribute to his current condition. We note that Dr. Allen did testify that Weaver was predisposed to sustaining the kind of injury for which he now suffers, because of several factors. Dr. Allen stated that Weaver's obesity,[3] the heavy and repetitive nature of his work, the one-level fusion at the L3-4 vertebrae that resulted from the 1990 automobile accident, and the fact that he smoked cigarettes combined to predispose him to sustaining the kind of injury from which he now suffers. However, Dr. Allen specifically stated that Weaver's prior back condition increased his chance of sustaining a herniated disc by only 5%. Accordingly, we conclude from the evidence presented that B E & K failed to satisfy its burden of establishing a causal connection between Weaver's misrepresentation on the employment application and his current injury. We do not in any way condone Weaver's fraudulent conduct in misrepresenting his prior injury on the employment *20 application. We do, however, conclude that there has been shown no causal connection between the misrepresentation and the current injury. Accordingly, the judgment is affirmed.
AFFIRMED.
MONROE and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs specially.
THOMPSON, J., concurs in the result.
ROBERTSON, Presiding Judge, concurring specially.
I concur in the affirmance; however, I write specially to address the insistence of counsel for B E & K in their brief that this court "must reweigh the evidence at trial" (emphasis in original). That contention is baseless: in appeals arising under the Workers' Compensation Act as amended in 1992, this court has consistently held that we are not allowed to reweigh the evidence presented to the trial court. E.g., Mayfield Trucking Co. v. Napier, 724 So.2d 22 (Ala.Civ.App.1998). That rule has now also been adopted by the Alabama Supreme Court:
"It is well `settled that the trial court's findings on disputed evidence in a workers' compensation case are conclusive.' Ex parte Ellenburg, 627 So.2d 398, 399 (Ala.1993). Moreover, the 1992 amendments to the Workers' Compensation Act `did not alter the rule that [the Court of Civil Appeals] does not weigh the evidence before the trial court.' Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
". . . .
"The Court of Civil Appeals is authorized to determine whether the trial court's decision is supported by sufficient evidence, but it is not authorized to independently weigh the evidence. See Ex parte Alabama Ins. Guar. Ass'n, 667 So.2d 97, 99 (Ala.1995) (holding that the Court of Civil Appeals committed reversible error in reweighing the evidence in a workers' compensation case)."
Ex parte Golden Poultry Co., 772 So.2d 1175, 1177 (Ala.2000).
NOTES
[1] The trial court made the same findings of fact as in October 1998, except that it substituted the phrase "clear and convincing evidence" for the phrase "preponderance of the evidence" in the last sentence of paragraph four.
[2] It is also undisputed that Weaver knowingly misrepresented his criminal record on the application.
[3] Weaver is 5 feet, 11 inches tall and weighs approximately 300 pounds.