MOORE, Judge.
J.W.J., Jr. (“the father”), appeals from the judgment of the Madison Circuit Court awarding P.K.R. and P.H.R. (“the maternal grandparents”) visitation with his minor child. We reverse and remand.

Facts

On January 26, 2001, the Madison Juvenile Court (“the juvenile court”) entered a judgment declaring J.W.J., Jr., to be the biological father of P.J. (“the child”). The juvenile court awarded custody of the child to the child’s mother and awarded the father visitation rights.
During the mother’s pregnancy and after the child’s birth, the mother and the child resided with the maternal grandparents. The maternal grandparents cared for the child while the mother worked and attended college. The father regularly exercised his visitation rights.
The mother died on December 19, 2002, when the child was two and one-half years old. The father picked the child up for his regular visitation period on December 20, 2002, and returned the child to the maternal grandparents’ home on December 26, 2002. The father later assumed physical custody of the child, and the child resided with the father in the home of the father’s parents (the child’s paternal grandparents). On January 5, 2003, the father and the maternal grandparents had a discussion regarding custody of the child; that discussion ended with the father denying the maternal grandparents any visitation with the child.
Not long after that discussion, the maternal grandparents petitioned the juvenile court for visitation rights, pursuant to Ala. Code 1975, § 30-3-4.1 (“the Grandparent Visitation Act”). The father and the maternal grandparents reached an agreement, which the juvenile court incorporated into a pendente lite order, whereby the *1037 maternal grandparents were awarded visitation on the first and third weekends of each month. The juvenile court subsequently entered a final order awarding the maternal grandparents far more extensive visitation rights. The father appealed, and this court reversed the juvenile court’s judgment, concluding that the juvenile court lacked jurisdiction to enter an order on the visitation petition and that the juvenile court’s order was therefore void. See J.W.J. v. P.K.R., 906 So.2d 182 (Ala.Civ.App.2005).
Although this court ruled that the order of the juvenile court awarding grandparent visitation was void, the father continued to allow the maternal grandparents to visit with the child. The father permitted the child to stay with the maternal grandparents one weekend per month and for seven days during June 2004. The father also allowed the child to visit with the maternal grandparents on additional occasions upon the maternal grandparents’ request.
Although regularly receiving visitation, the maternal grandparents filed a second petition for grandparent-visitation rights in the Madison Circuit Court (“the circuit court”) in February 2005. On April 1, 2005, the father answered the petition, asserting that the Grandparent Visitation Act violates his federal constitutional rights. On May 4, 2005, the attorney general filed his response to the father’s constitutional challenge.
On May 4, 2006, the circuit court held an ore tenus hearing. The father testified that the child loves the maternal grandparents and that the maternal grandparents love the child. He stated that he would not take the child out of the lives of the maternal grandparents because they love each other and because the child needs her mother’s side of the family in her life. The father testified that he has no doubt that the maternal grandparents will take care of the child during the time they visit with her. The father testified, however, that he felt it would be detrimental to the child if he were deprived of the ability to determine the time, the place, and the manner of the child’s visitation with the maternal grandparents. The father noted that during the time a court-ordered visitation schedule had been in place, the maternal grandparents had denied his request to alter the visitation schedule so the child could attend an event with him and his family on the fourth of July.[1] He stated that when there is no court-ordered visitation schedule in place there is communication and flexibility. He also stated that during the time in which there was no court-ordered visitation schedule, he had agreed to set the maternal grandparents’ visitation for the second weekend of each month unless one of the parties needed to change that schedule.
The maternal grandparents do not dispute that the father has allowed the child to visit with them; however, they assert that there have been communication problems that worsen when there is no court-ordered visitation schedule in place. They testified that the visitation plans are often made at the last minute and that the last-minute arrangements create planning problems. The maternal grandfather testified that he has to contact the father every month and verify which weekend they will have the child for visitation. The maternal grandparents also testified that they have problems getting in touch with the child because the child is not home when they call her. They further testified that the father had not informed them of where the child would be attending school until school had already begun and that, therefore, the maternal grandmother had not been able to be present for the child’s *1038 first day of school. The maternal grandfather testified that he has been concerned that the father would “cut off’ visitation. He acknowledged that the father had testified at his deposition that he did not foresee himself withholding visitation from the maternal grandparents but that he would not exclude the possibility.
The testimony of Dr. Frankie Preston, a psychologist who had evaluated the child, indicated that termination or undue limitation of the child’s access to the maternal grandparents could be harmful to the child. The father testified that he respects Dr. Preston’s advice and that he intended to follow it. The parties stipulated that Dr. Preston’s current opinion was that the child is a “healthy, normal five year old.”
On May 11, 2006, the circuit court entered a judgment setting forth findings of fact and conclusions of law and awarding visitation rights to the maternal grandparents. Specifically, the circuit court ordered that the maternal grandparents “shall visit” with the child on the following occasions:
“a. The second weekend of every month from the end of the school day or 4:00 p.m. on Friday until the beginning of school or 8:00 a.m. Monday morning. If this weekend conflicts with the father’s birthday or Father’s Day then the parties will cooperate in choosing an alternate weekend for that month.
“b. The fifth weekend of every month from the end of the school day or 4:00 p.m. on Friday until the beginning of school or 8:00 a.m. Monday morning. If this weekend conflicts with the father’s birthday or Father’s Day then the parties will cooperate in choosing an alternate weekend for that month.
“c. One week in June to begin with the second weekend visitation. This visit will begin at 4:00 p.m. Friday through the following week and end on the second Monday morning at 8:00 a.m. If this weekend conflicts with the father’s birthday or Father’s Day then the parties will cooperate in choosing an alternate week for that month.
“d. One week in July to begin with the second weekend visitation. This visit will begin at 4:00 p.m. Friday through the following week and end on the second Monday morning at 8:00 a.m.
“e. The week following Christmas to start at 8:00 a.m. on December 26th through January 2nd at 4:00 p.m.
“f. Mother’s Day from 8:00 a.m. to 6:00 p.m.
“g. Grandparent’s Day every even-numbered year from 8:00 a.m. to 6:00 p.m.
“h. [The child’s] birthday from 5:00 p.m. to 8:00 p.m., every odd-numbered year. In even-numbered years, from 5:00 p.m. to 8:00 p.m. on the day preceding or subsequent to [the child’s] birthday.
“i. Visitation provided for herein shall not preclude other and further visitation as the parties may from time to time agree. The households of both parties shall be maintained in a wholesome and proper moral atmosphere whenever the minor child is present.”
The judgment also granted the maternal grandparents telephone-visitation rights and the right to eat lunch with the child at her school and to attend the child’s school and extracurricular activities.
The father filed a timely motion to alter, amend, or vacate the judgment, which the circuit court denied on August 7, 2006, prompting the filing of this appeal on September 18, 2006.

*1039
Discussion

A. Facial Challenge to the Grandparent Visitation Act
The father first argues that the Grandparent Visitation Act is unconstitutional on its face because, he says, it does not affirmatively require a trial court to presume that a parent’s decision regarding grandparent visitation is in the best interests of the child.
In Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court considered the constitutionality of a Washington statute granting trial courts the authority to award visitation to any person who convinced the court that visitation would be in the best interests of a child. As construed by the Washington Supreme Court, the statute did not require the lower courts to give any deference to, or special weight or presumption in favor of, a fit parent’s decision regarding visitation. 530 U.S. at 67, 120 S.Ct. 2054. As such, a plurality of the Court ruled, the statute, as applied, unduly infringed on the mother’s fundamental constitutional right to the care, custody, and control of her child. Id.
Following Troxel, this court held that the Grandparent Visitation Act, as it existed in 2000, was unconstitutional. R.S.C. v. J.B.C., 812 So.2d 361 (Ala.Civ.App.2001). At that time, the Grandparent Visitation Act contained a presumption that it would be in the best interest of a child to have visitation with his or her grandparents. A majority of this court ruled that that presumption violated the parents’ fundamental constitutional right to the care, custody, and control of their child.
A year later, in L.B.S. v. L.M.S., 826 So.2d 178 (Ala.Civ.App.2002), this court construed subsection 30-3-4.1(d)(6) to require trial courts to give great weight to the decision of parents as to visitation with grandparents. Subsection 30 — 3—4.1(d)(6) provided, at the time, that in determining the best interests of the child, the trial court shall consider “[ojther relevant factors in the particular circumstances.” Although that subsection did not specifically mention consideration of the parents’ determination, the court construed the subsection broadly so as to assure its constitutionality. A majority of the court agreed that the trial court must presume that the visitation decision of the parent is in the best interests of the child.
In 2003, the legislature amended the Grandparent Visitation Act. See Act No. 2003-383, Ala. Acts 2003. Among other changes, the legislature deleted the presumption in favor of grandparent visitation declared unconstitutional in R.S.C. and expanded subsection 30-3-4.1 to require the trial court to consider, when making its best-interests determination, “[ojther relevant factors in the particular circumstances, including the wishes of any parent who is living. ” (Emphasis added.) In Dodd v. Burleson, 932 So.2d 912, 919 (Ala.Civ.App.2005), a majority of this court construed the amended statute as having explicitly adopted the presumption in favor of the parent’s visitation decision first recognized in L.B.S.
The father is correct that the current Grandparent Visitation Act does not expressly state that the parent’s visitation decision shall be presumed to be in the child’s best interests. Rather, as written, the statute simply requires the trial court to consider the parent’s wishes along with other factors without specifying that any particular factor should be given any greater weight. However, as stated in L.B.S.:
“Our supreme court has recognized that ‘[a] statute may be enacted without containing [a] provision for constitutional requirements but in such terms as not to exclude them and to justify the court in holding that it was intended to be sub- *1040 jeet to those requirements, which should then be treated as a feature of it.’ Almori v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 516 (1944).”
826 So.2d at 185. In order to meet the constitutional requirements set out in Troxel, the statute must contain a presumption that the parent’s wishes are presumed to be in the child’s best interests. In L.B.S. and Dodd, this court has treated that presumption as an implied part of § 30 — 3—4.1(d)(6). Thus, the implied presumption is as much a feature of the statute as its plain language. Consequently, the statute is not unconstitutional on its face, as the father argues, for failing to expressly include a presumption in favor of a parent’s visitation decisions.
B. “As Applied” Challenge to the Grandparent Visitation Act
The father next argues that the Grandparent Visitation Act is unconstitutional as applied to him for two reasons: 1) he was already voluntarily providing visitation to the maternal grandparents and 2) the circuit court failed to give any presumption in favor of his visitation preferences.
In support of his first position, the father argues that in Beck v. Beck, 865 So.2d 446 (Ala.Civ.App.2003), this court held that “where visitation is not being denied, clear and convincing evidence must be presented to show that it would be denied in the future.” Actually, in Beck, a majority of the court merely ruled that the grandparents had used an improper procedure to petition the trial court for visitation, thereby rendering the visitation award void. As Judge Pittman’s special writing noted, all further comments in the lead opinion regarding the substantive propriety of the visitation order in the Beck opinion amounted to no more than dicta. 865 So.2d at 450 (Pittman, J., concurring in the result).
Even if the remainder of the lead opinion was not dicta, the court did not hold as the father contends. Presiding Judge Yates wrote in the lead opinion:
“Ordering scheduled visitation in a case where the grandparents have never been denied visitation with the child, where there is no indication in the record that the father would deprive his child of a relationship with the grandparents, where the grandmother described her relationship with the child as ‘normal grandparent involvement,’ and where the grandparents’ time with child has decreased in large part because of the child’s and the parent’s schedules, goes beyond the constitutionally mandated limits for awarding grandparent visitation.”
865 So.2d at 450. Presiding Judge Yates did not state that when a living parent voluntarily grants grandparents visitation a grandparent can only petition the court for judicial enforcement of his or her visitation rights if clear and convincing evidence shows that the living parent would deny visitation in the future.
Unlike many grandparent-visitation statutes, see, e.g., Miss.Code Ann. § 93-16-3(2)(a) (1994) (court must find that “the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child”); R.I. Gen. Laws § 15-5-24.3(a)(2)(iii)-(iv) (Supp.1999) (court must find that parents prevented grandparent from visiting grandchild and that “there is no other way the petitioner is able to visit his or her grandchild without court intervention”), Alabama’s Grandparent Visitation Act does not condition court-ordered visitation in every case upon a prior denial of visitation by the living parent.[2] The Grandparent Visitation Act *1041 allows “any grandparent” to file an original action for visitation rights “[w]hen one or both parents of the child are deceased,” without regard for whether the living parent has previously denied or significantly restricted visitation. § 30 — 3—4.1(b)(1).
In Troxel, supra, the mother did not deny the grandparents visitation, but she wanted to restrict visitation to one short visit per month and special holidays. 530 U.S. at 571, 120 S.Ct. 2402. The grandparents petitioned for visitation on two weekends per month and two full weeks in the summer. Id. The trial court gave no weight to the mother’s visitation plan; instead, it chose a middle ground, ordering one weekend of visitation per month, one week in the summer, and time on both grandparents’ birthdays. Id. Considering those facts, together with the trial court’s apparent use of a presumption that grandparent visitation would be in the best interests of the child, the lead opinion in Troxel concluded that the trial court had unduly infringed on the mother’s fundamental right to make decisions concerning the care, custody, and control of her children. Id.
As we read Troxel, a grandparent-visitation statute is not unconstitutional simply because it allows grandparents to petition a court for greater visitation rights than they are already receiving. Rather, the key to the holding in Troxel was that the trial court had improperly failed to give proper weight to the parent’s visitation decision. Hence, we do not agree that the Grandparent Visitation Act has been unconstitutionally applied to the father based on the fact that it allowed the maternal grandparents to petition for greater visitation rights than the father was already voluntarily providing.
As to the father’s second point, we agree that a trial court would act unconstitutionally if, when acting on a petition for grandparent visitation, it failed to afford a presumption that the living parent’s decision as to the amount, method, and duration of visitation was in the best interests of the child. The question presented here is whether the circuit court failed to apply that presumption, thus unduly infringing on the father’s due-process rights.
In this case, the circuit court entered a very detailed six-page order. In that order, the circuit court, citing Dodd, supra, indicated that in deciding the visitation issue, it had considered “a variety of factors,” including:
“[T]he nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting the visitation would have on the child’s relationship with the parents; the physical and emotional health of all the adults involved, the parents and the grandparents alike; the stability of the child’s living and schooling arrangements; the wishes and preferences of the child.”
The circuit court also stated that it had considered the “parent’s own determination regarding the visitation.” However, the circuit court did not indicate that it gave any greater weight to the father’s determination than it did the other factors it considered. The circuit court did not explicitly recognize that the father’s decision is presumed to be in the best interests of the child.
In the body of the order, the circuit court maintained that the visitation issue *1042 required a judicial resolution because the father and the maternal grandparents could not agree as to the appropriate visitation schedule and that it would be in the child’s best interests if the visitation controversy could be finally resolved in a manner that would best preserve the relationship between the child and the maternal grandparents. Those comments imply that the circuit court did not give any special presumption in favor of the father’s visitation decision. The circuit court did not note that when the parties disagree as to the appropriate visitation schedule, the parent’s position should be presumed to be in the best interests of the child. The circuit court further did not note that its role in deciding a dispute over a grandparent-visitation issue is limited to determining whether the grandparents have properly rebutted the presumption in favor of the parent’s decision.[3] Instead, the circuit court improperly used a simple best-interests analysis to reach its own independent decision as to the mode of visitation that would best serve the interests of the child.[4]
In Troxel, the Court criticized the Washington statute at issue for granting trial courts the power to unilaterally impose a visitation plan on parents based on the trial court’s own determination of the best interests of the child. The Court stated:
“Once the visitation petition has been filed in court and the matter is placed before a judge, a parent’s decision that visitation would not be in the child’s best interest is accorded no deference. [The Washington statute] contains no requirement that a court accord the parent’s decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent’s estimation of the child’s best interests, the judge’s view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge’s determination of the child’s best interests.”
530 U.S. at 67, 120 S.Ct. 2054 (quoted in R.S.C., 812 So.2d at 371). The Court held that this approach was unconstitutional because “the decision whether [a grandpa-rental] relationship would be beneficial in any specific case is for the parent to make in the first instance.” 530 U.S. at 70, 120 S.Ct. 2054. “ ‘It is not within the province of the state to make [a different decision] concerning the custody of children merely because it could make a “better decision.” ’ ” Troxel, 530 U.S. at 63, 120 S.Ct. 2054 (quoting In re Smith, 137 Wash.2d 1, 20, 969 P.2d 21, 31 (1998)).
Because we conclude that the circuit court failed to give the appropriate presumptive effect to the father’s visitation *1043 decisions and decided the case based solely on its own view of the best interests of the child, we agree that the circuit court’s order unduly infringes upon the father’s due-process rights. Accordingly, we reverse the judgment and remand the case for further proceedings consistent with this opinion.[5]
The appellees’ request for the award of an attorney fee on appeal is denied.
REVERSED AND REMANDED.
BRYAN and THOMAS, JJ., concur.
PITTMAN, J., concurs in part and concurs in the result, with writing, which THOMPSON, P.J., joins.

. The maternal grandmother testified that they had already made plans for that day.

. Section 30-3-4.1(b)(5) grants grandparents the right to file an original action for visitation when the child is living with both biological parents, who are still married to one another, and either or both parents have ex *1041 ercised parental authority to prohibit a relationship between the child and the grandparents. That subsection is not at issue in this case.

. The father maintains in the standard-of-review section of his brief that the maternal grandparents had the burden of proving by clear and convincing evidence that the visitation they sought was in the best interests of the child. The circuit court, again citing Dodd, supra, ruled that the maternal grandparents did not have to prove substantial harm to the child in the absence of visitation, but could rely on the best-interests standard. Accordingly, this court is not asked to decide the still unsettled question of whether due process requires grandparents to prove the child would be substantially harmed if visitation is not allowed. See R.S.C., supra; L.B.S., supra; and Dodd, supra.

. The circuit court ruled that the "preponderance of the evidence” supported grandparent visitation. Because we are remanding this case for further proceedings, we note that the maternal grandparents have the burden of producing clear and convincing evidence in order to rebut the presumption in favor of the father's visitation decision. See L.B.S., 826 So.2d at 186.

. Because we are vacating the circuit court’s visitation order on this ground, we do not address the father's remaining arguments that the circuit court failed to consider the maternal grandparents’ alleged hostility towards him; that the circuit court granted the maternal grandparents custody, not visitation; and that the circuit court erred in denying the admission into evidence of an anonymous letter.