MOORE, Judge.
J.W.J., Jr. (“the father”), appeals from a judgment entered on July 26, 2007, by the Madison Circuit Court, awarding P.K.R. and P.H.R. (“the maternal grandparents”) visitation with the father’s minor child (“the child”). We affirm in part, reverse in part, and remand.

Facts

This is the third time this case has been before this court on appeal. In J.W.J., Jr. v. P.K.R., 906 So.2d 182 (Ala.Civ.App. 2005), this court dismissed the father’s appeal from a void judgment entered by the Madison Juvenile Court that purported to award the maternal grandparents specified visitation with the child. In J.W.J., Jr. v. P.K.R., 976 So.2d 1035 (Ala.Civ.App.2007) (“J.W.J.II”), this court reversed a judgment of the Madison Circuit Court (“the trial court”) that was entered on May 11, 2006. Because they have not changed, we reiterate the facts from J.W.J. II:
“On January 26, 2001, the Madison Juvenile Court (‘the juvenile court’) entered a judgment declaring J.W.J., Jr., to be the biological father of P.J. (‘the child’). The juvenile court awarded cus *946 tody of the child to the child’s mother and awarded the father visitation rights.
“During the mother’s pregnancy and after the child’s birth, the mother and the child resided with the maternal grandparents. The maternal grandparents cared for the child while the mother worked and attended college. The father regularly exercised his visitation rights.
“The mother died on December 19, 2002, when the child was two and one-half years old. The father picked the child up for his regular visitation period on December 20, 2002, and returned the child to the maternal grandparents’ home on December 26, 2002. The father later assumed physical custody of the child, and the child resided with the father in the home of the father’s parents (the child’s paternal grandparents). On January 5, 2003, the father and the maternal grandparents had a discussion regarding custody of the child; that discussion ended with the father denying the maternal grandparents any visitation with the child.
“Not long after that discussion, the maternal grandparents petitioned the juvenile court for visitation rights, pursuant to Ala.Code 1975, § 30-3-4.1 (‘the Grandparent Visitation Act’). The father and the maternal grandparents reached an agreement, which the juvenile court incorporated into a pendente lite order, whereby the maternal grandparents were awarded visitation on the first and third weekends of each month. The juvenile court subsequently entered a final order awarding the maternal grandparents far more extensive visitation rights. The father appealed, and this court reversed the juvenile court’s judgment, concluding that the juvenile court lacked jurisdiction to enter an order on the visitation petition and that the juvenile court’s order was therefore void. See J.W.J. v. P.K.R., 906 So.2d 182 (Ala.Civ.App.2005).
“Although this court ruled that the order of the juvenile court awarding grandparent visitation was void, the father continued to allow the maternal grandparents to visit with the child. The father permitted the child to stay with the maternal grandparents one weekend per month and for seven days during June 2004. The father also allowed the child to visit with the maternal grandparents on additional occasions upon the maternal grandparents’ request.
“Although regularly receiving visitation, the maternal grandparents filed a second petition for grandparent-visitation rights in the Madison Circuit Court (‘the circuit court’) in February 2005. On April 1, 2005, the father answered the petition, asserting that the Grandparent Visitation Act violates his federal constitutional rights. On May 4, 2005, the attorney general filed his response to the father’s constitutional challenge.
“On May 4, 2006, the circuit court held an ore tenus hearing. The father testified that the child loves the maternal grandparents and that the maternal grandparents love the child. He stated that he would not take the child out of the lives of the maternal grandparents because they love each other and because the child needs her mother’s side of the family in her life. The father testified that he has no doubt that the maternal grandparents will take care of the child during the time they visit with her. The father testified, however, that he felt it would be detrimental to the child if he were deprived of the ability to determine the time, the place, and the manner of the child’s visitation with the maternal grandparents. The father noted that during the time a court-ordered visitation schedule had been in place, the *947 maternal grandparents had denied his request to alter the visitation schedule so the child could attend an event with him and his family on the fourth of July. He stated that when there is no court-ordered visitation schedule in place there is communication and flexibility. He also stated that during the time in which there was no court-ordered visitation schedule, he had agreed to set the maternal grandparents’ visitation for the second weekend of each month unless one of the parties needed to change that schedule.
“The maternal grandparents do not dispute that the father has allowed the child to visit with them; however, they assert that there have been communication problems that worsen when there is no court-ordered visitation schedule in place. They testified that the visitation plans are often made at the last minute and that the last-minute arrangements create planning problems. The maternal grandfather testified that he has to contact the father every month and verify which weekend they will have the child for visitation. The maternal grandparents also testified that they have problems getting in touch with the child because the child is not home when they call her. They further testified that the father had not informed them of where the child would be attending school until school had already begun and that, therefore, the maternal grandmother had not been able to be present for the child’s first day of school. The maternal grandfather testified that he has been concerned that the father would ‘cut off visitation. He acknowledged that the father had testified at his deposition that he did not foresee himself withholding visitation from the maternal grandparents but that he would not exclude the possibility.
“The testimony of Dr. Frankie Preston, a psychologist who had evaluated the child, indicated that termination or undue limitation of the child’s access to the maternal grandparents could be harmful to the child. The father testified that he respects Dr. Preston’s advice and that he intended to follow it. The parties stipulated that Dr. Preston’s current opinion was that the child is a ‘healthy, normal five year old.’
“On May 11, 2006, the circuit court entered a judgment setting forth findings of fact and conclusions of law and awarding visitation rights to the maternal grandparents. Specifically, the circuit court ordered that the maternal grandparents ‘shall visit’ with the child on the following occasions:
“ ‘a. The second weekend of every month from the end of the school day or 4:00 p.m. on Friday until the beginning of school or 8:00 a.m. Monday morning. If this weekend conflicts with the father’s birthday or Father’s Day then the parties will cooperate in choosing an alternate weekend for that month.
“ ‘b. The fifth weekend of every month from the end of the school day or 4:00 p.m. on Friday until the beginning of school or 8:00 a.m. Monday morning. If this weekend conflicts with the father’s birthday or Father’s Day then the parties will cooperate in choosing an alternate weekend for that month.
“ ‘c. One week in June to begin with the second weekend visitation. This visit will begin at 4:00 p.m. Friday through the following week and end on the second Monday morning at 8:00 a.m. If this weekend conflicts with the father’s birthday or Father’s Day then the parties will cooperate in choosing an alternate week for that month.
“ ‘d. One week in July to begin with the second weekend visitation. This *948 visit will begin at 4:00 p.m. Friday-through the following week and end on the second Monday morning at 8:00 a.m.
“ ‘e. The week following Christmas to start at 8:00 a.m. on December 26th through January 2nd at 4:00 p.m.
“ ‘f. Mother’s Day from 8:00 a.m. to 6:00 p.m.
“ ‘g. Grandparent’s Day every even-numbered year from 8:00 a.m. to 6:00
p.m.
“ ‘h. [The child’s] birthday from 5:00 p.m. to 8:00 p.m., every odd-numbered year. In even-numbered years, from 5:00 p.m. to 8:00 p.m. on the day preceding or subsequent to [the child’s] birthday.
“ ‘i. Visitation provided for herein shall not preclude other and further visitation as the parties may from time to time agree. The households of both parties shall be maintained in a wholesome and proper moral atmosphere whenever the minor child is present.’
“The judgment also granted the maternal grandparents telephone-visitation rights and the right to eat lunch with the child at her school and to attend the child’s school and extracurricular activities.”
976 So.2d at 1036-1038 (footnote omitted).
In J.W.J. II, a majority of this court held that the trial court had violated the father’s substantive due-process rights by failing to presume that his decisions regarding the amount, method, and duration of grandparent visitation were in the best interests of the child. 976 So.2d at 1043. The entire court agreed that the trial court had erred in deciding the case based on a preponderance-of-the-evidence standard because the presumption in favor of the father’s visitation decisions could only be overcome by clear and convincing evidence to the contrary. See 976 So.2d at 1042 n. 4; and 976 So.2d at 1043 (Pittman, J., joined by Thompson, P.J., concurring in part and concurring in the result). The court remanded the case “for further proceedings consistent with this opinion.” 976 So.2d at 1043.
On remand, the trial court did not take additional evidence, but it amended its May 11, 2006, judgment to read as follows:
“This Court having reviewed and reconsidered all of the evidence presented in the trial of this case, pursuant to the remand of this case to this Court by the Alabama Court of Civil Appeals in the decision entered by that Court on June 29, 2007, enters the following additional and revised findings and orders:
“(1) On remand, this Court explicitly recognizes that the decision of the [father] as a parent regarding visitation is presumed by law to be in the best interests of the child.
“(2) This Court finds, however, that [the maternal grandparents] have properly rebutted the presumption in favor of the father’s decision by clear and convincing evidence.
“(3) Based on the foregoing, the maternal grandparents are awarded visitation rights with the child as set out in Paragraphs 1-6 of this Court’s Order dated May 11, 2006, pursuant to Sec. 30-3-4.1, Code of Alabama (1975).
“(4) It is this Court’s intention that this Order on Remand supplements and/or revises, as set out above, the Order entered in this case by this Court on May 11, 2006, taking into account on remand the rulings of the Alabama Court of Civil Appeals in its opinion entered on June 29, 2007.”
The trial court entered the amended judgment on July 27, 2007. The father timely appealed on August 8, 2007.

*949
Trial Court's Compliance With Remand Order

The father first argues that the trial court did not comply with this court’s remand order because, he says, the trial court
“merely stated in its order on remand that it ‘explicitly considered the wishes of the father,’ that ‘the grandparents had properly rebutted the presumption in favor of the father,’ and that the court made the determination ‘by clear and convincing evidence.’ ”
The father claims that the trial court simply “stuck the appropriate language in” the judgment without actually affording the father a presumption that his visitation decisions were in the best interests of the child and without making specific findings as to how the maternal grandparents had overcome that presumption by clear and convincing evidence. The father asserts that “the trial court did not consider the facts any differently despite the substantive rulings of the Alabama Court Civil Appeals as contained in the order reversing and remanding this case to the trial court.”
In Knight v. Beverly Health Care Manor Health Care Center, 820 So.2d 92 (Ala. 2001), the supreme court held, as a matter of first impression, that a trial court may find that a person is in a “persistent vegetative state” — i.e., a “permanent unconscious state” pursuant to Ala.Code 1975, § 22-8A-3(10) — -based only on clear and convincing evidence. 820 So.2d at 100-02. The court concluded that the record contained clear and convincing evidence supporting the trial court’s determination, but it said:
“After reviewing the evidence presented to the trial court, we conclude that the record contains clear and convincing evidence to support the trial court’s finding that Mrs. Cameron is in a persistent vegetative state. However, the law is settled that weighing evidence is not the usual function of an appellate court. This is especially true where, as here, the assessment of the credibility of witnesses is involved. The ore tenus rule reflects this deference; it accords a presumption of correctness to the trial court’s findings because of that court’s unique ability to observe the demeanor of witnesses. Thus, although the record is sufficiently complete to obviate the need for any further evidentiary hearing, we conclude that it is appropriate to remand this cause to the trial court for its explicit finding as to whether there is clear and convincing evidence indicating that Mrs. Cameron is in a persistent vegetative state. Further, because we request only that the trial court apply the clear-and-convincing standard to the evidence it has already received and evaluated, we instruct that the trial court return its order on remand to this Court within 14 days.”
820 So.2d at 102 (citations omitted).
In BE & K, Inc. v. Weaver, 743 So.2d 476 (Ala.Civ.App.1999), this court similarly reversed a trial court’s judgment when the trial court had failed to base its factual findings on clear and convincing evidence in a workers’ compensation case in which the employee had alleged a gradual back injury. See Ala.Code 1975, § 25-5-81(c). On remand, the trial court “made the same findings of fact as in [its original order], except that it substituted the phrase ‘clear and convincing evidence’ for the phrase ‘preponderance of the evidence’ BE & K, Inc. v. Weaver, 801 So.2d 12, 14 n. 1 (Ala.Civ.App.2000).[1]
*950 As these cases illustrate, when an appellate court remands a case to the trial court with directions to reevaluate the evidence according to the appropriate evidentiary standard, it is intended that the trial court will not take additional evidence. See also Ex parte Queen, 959 So.2d 620 (Ala.2006). Also, although a trial court may decide to make wholesale changes to its previous factual findings and judgment in light of its reexamination of the evidence, see, e.g., Tallassee Super Foods v. Hepburn, 819 So.2d 63, 65 (Ala.Civ.App.2001) (on remand to reconsider evidence in light of clear- and-convincing-evidence standard, trial court “entered an exhaustive 13-page order in which it made findings of fact, reviewed the evidence, and .... concluded that [the employee] had presented clear and convincing evidence that her injury arose out of and in the course of her employment”), if appropriate, the trial court may restate the same factual findings so long as it finds that those facts are supported by the proper evidentiary standard.
This court cannot discern the mental operation of a trial judge other than by the words contained in the trial court’s orders and judgments. In the July 27, 2007, judgment the trial court stated that it had explicitly presumed that the father’s decision was in the best interests of the child. The trial court further stated that the maternal grandparents had rebutted that presumption by clear and convincing evidence. Based on its reexamination of the evidence using the appropriate legal and evidentiary standards, the trial court reached the same factual conclusions that it had reached in its May 11, 2006, judgment. We find that the trial court complied with our order on remand and that the father has not demonstrated that the trial court committed reversible error by failing to more fully elaborate on its decision-making process.

Alleged Failure of the Trial Court to Consider All Visitation Factors

The father maintains that the trial court ignored the hostility of the maternal grandparents toward him when making its visitation determination. However, in its May 11, 2006, judgment, which was incorporated into its July 27, 2007, judgment, the trial court specifically considered that factor. The trial court recited the testimony of Dr. Preston in which the doctor stated that he had found no evidence indicating that the parties were making any derogatory remarks about one another in the child’s presence, a fact which the father confirmed in his testimony. Although the record contains other evidence relating to the alleged hostility of the maternal grandparents toward the father that the trial court did not cite in its judgment, the trial court evidently found the disinterested testimony of Dr. Preston to be more probative on that point. We find that the trial court did not commit reversible error by weighing the evidence on this issue in favor of the maternal grandparents.

The Content of the Trial Court’s Judgment

The father next argues that the trial court exceeded its discretion in fashioning its visitation plan. The father argues that the visitation plan established by the judgment grants the maternal grandparents authority over the child’s education and medical attention and gives them the power to prevent the father from spending Father’s Day and the father’s birthday with the child.
*951 It is a custodial parent’s fundamental right to direct and control the upbringing and education of his or her child. See Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Alabama law recognizes both by statute, see Ala.Code 1975, § 30-3-151, and by case-law, see, e.g., Morgan v. Morgan, 964 So.2d 24, 31 (Ala.Civ.App.2007), that an award of legal custody bestows on the custodian authority over the child’s education. Likewise, Alabama law recognizes that it is the legal custodian’s right and duty to provide medical attention for the child. See R.J.D. v. Vaughan Clinic, P.C., 572 So.2d 1225 (Ala.1990). Section 30-3-4.1(b) allows grandparents to petition for “visitation rights,” not “custody rights.” Thus, a trial court may not, under the authority of § 30-3-4.1, delegate to a grandparent, in whole or in part, a custodial parent’s right to direct and control his or her child’s education or medical treatment.
After closely reviewing the trial court’s visitation order, we find that the trial court did not exceed the authority granted to it by § 30-3-4.1 as to the provisions relating to the child’s education but that the trial court did exceed its discretion in regard to the medical provision. The judgment awards the maternal grandparents visitation on the second and fifth weekends of each month from Friday, after the child has left school, to Monday, when the child returns to school. The judgment further bestows on the maternal grandparents the right to attend the child’s school and extracurricular activities, such as “school events, plays, award ceremonies, sporting events, concerts, etc.” Finally, the judgment grants the maternal grandparents the right to occasionally eat lunch with the child at the child’s school, subject to the school’s rules and regulations. The judgment does not give the maternal grandparents the right to direct which school the child attends or the right to instruct the child in a manner different from the father’s educational choice. The judgment further does not authorize the maternal grandparents to oversee the child’s homework, to review documents sent home by the school, or to undertake other educational oversight normally reserved for the child’s custodian.
As a practical matter, the child may be required to complete a school assignment over one of the weekends while the child is visiting the maternal grandparents, and she may actually seek and receive assistance from the maternal grandparents, but the judgment does not give the maternal grandparents a “right” to direct the child as to whether and how to perform the assignment. The judgment states that the father shall have reasonable telephone access to the child while she visits with the maternal grandparents. If the father disagrees with any input the maternal grandparents may provide in helping the child with a school project, he has a reasonable means of communicating his disagreement. Nothing in the judgment authorizes the maternal grandparents to disregard, or to substitute their own opinion for, the father’s decision. Consequently, we affirm that portion of the trial court’s judgment.
On the other hand, the judgment does improperly grant the maternal grandparents custodial rights relating to the child’s medical treatment. Paragraph 3 of the May 11, 2006, judgment, states: “In the event an emergency medical event should arise, the party then in physical custody of [the child] shall notify and consult the other party or parties, as time may reasonably allow, governing such emergency.” This provision requires the father not only to notify the maternal grandparents of the child’s medical emergencies, but to consult with them about the medical emergencies. Although the provision does not grant the maternal grand *952 parents the authority to make decisions regarding the medical treatment of the child in the father’s absence or to override the father’s medical decisions for the child, the provision does seem to require the father to advise the maternal grandparents of his medical decisions and to receive their advice regarding the same.
We agree with the father that the Grandparent Visitation Act does not permit a trial court to enter a judgment requiring a fit parent to share parenting responsibilities for the child with the child’s grandparents. Upon the death of a parent, the grandparents do not inherit that parent’s custodial rights. A trial court may not, in the guise of awarding visitation, actually confer upon grandparents custodial rights and duties. We conclude that a provision requiring a parent to notify and consult with a child’s grandparents regarding the child’s medical treatment improperly confers custodial rights on the grandparents that far exceed the visitation privileges the Act authorizes. Therefore, we reverse the judgment of the trial court insofar as it requires the father to notify and consult with the maternal grandparents regarding the child’s medical care.
As to the father’s argument that the trial court improperly granted the maternal grandparents custody of the child on Father’s Day or on the father’s birthday, we do not believe the language of the judgment supports his position. The judgment is clear and unambiguous to the effect that if one of the weekends normally reserved for grandparent visitation falls on Father’s Day or on the father’s birthday, the child will not visit with the maternal grandparents on that day; instead, it requires that the parties cooperate with one another to select an alternative weekend for grandparent visitation. Pursuant to the judgment, the child will always spend Father’s Day weekend and the weekend of the father’s birthday with the father, not the maternal grandparents. Based on this understanding, we therefore affirm that portion of the trial court’s judgment.

The Trial Court’s Exclusion of Evidence

Lastly, we address the father’s contention that the trial court erred in excluding from evidence a late January 2003 letter. As the facts in J.W.J. II indicate, on January 5, 2003, the father began withholding visitation from the maternal grandparents. In late January 2003, the father received an anonymous letter with a postmark date of January 21, 2003. The father stated that the contents of that letter confirmed to him that the maternal grandparents were hostile toward him and that his prior decision that it was in the best interests of the child to cut off all contact with the maternal grandparents was correct. The father attempted to introduce the letter into evidence for the sole purpose of showing the father’s state of mind as to the reason he had withheld visitation from the maternal grandparents. The trial court excluded the letter, reasoning that the father had begun withholding visitation from the maternal grandparents at least 16 days before he had received the letter, so it could not have possibly affected his initial decision to withhold visitation.
The trial court’s reasoning was sound to a point. The contents of the letter certainly could not have contributed to the father’s initial decision to withhold visitation. However, as the father testified, the letter had reinforced his conviction that grandparent visitation would be contrary to the child’s best interests and had contributed to his decision to continue withholding visitation. With that said, the trial court did not commit reversible error in excluding the letter. The only purpose of the letter was to substantiate the father’s belief that the maternal grandparents were hostile toward him and, thus, that he had a good *953 reason for continuing to withhold visitation. The father introduced other evidence on these same points, and the trial court did not need to read the contents of the letter to understand the father’s reaction. Accordingly, any error in excluding the letter would be harmless error. See Rule 45, Ala. R.App. P.; see also Sweatman v. Federal Deposit Ins. Corp., 418 So.2d 893, 897 (Ala.1982) (trial court’s exclusion of cumulative evidence ordinarily will not result in reversible error).
For the foregoing reasons, the judgment of the trial court is due to be affirmed in part and reversed in part, and the cause is remanded for the entry of a judgment consistent with this opinion.
The maternal grandparents’ request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN, J., concurs specially.
PITTMAN, J., concurs in the result, without writing.

. Just as Ala.Code 1975, § 30-3-4.1(e), requires trial courts to make specific written findings of fact in support of their rulings in *950 grandparent-visitation cases, Ala.Code 1975, § 25-5-88, requires trial courts to make specific written findings of fact and conclusions of law in workers' compensation cases.