THOMAS, Judge.
This is the second time Michael Gentry ("the father") has sought review of an interlocutory order entered by the Jefferson Circuit Court ("the trial court") in the grandparent-visitation action filed by Nancy Schillaci ("the maternal grandmother") and Ben Schillaci ("the maternal stepgrandfather"). See Ex parte Gentry, 228 So.3d 1016 (Ala. Civ. App. 2017). The procedural history was set out in Ex parte Gentry, 228 So.3d at 1018-19 :
"The father and his wife, Whitney Gentry, who died in February 2014, were the parents of three children. In August 2016, the maternal grandmother and the maternal stepgrandfather filed a complaint in the trial court seeking an award of visitation with the children pursuant to Ala. Code 1975, § 30-3-4.2, which became effective on August 1, 2016. See Act No. 2016-362, § 5, Ala. Acts 2016. That same day, [Eddie Raymond Gentry ('the paternal grandfather') and Robin Lynne Gentry ('the paternal stepgrandmother') ] filed a similar complaint.[1] The trial court consolidated *70 the actions and appointed a guardian ad litem for the children.
"In September 2016, the father moved to dismiss the actions. One of the arguments the father asserted in his motion, as amended, was that the maternal stepgrandfather and the paternal stepgrandmother should be dismissed as parties to their respective actions because, he contended, neither is a 'grandparent' as that term is defined in § 30-3-4.2(a)(1) ; therefore, the father argued, they lacked 'standing' to bring the actions under § 30-3-4.2(b). The trial court denied the father's motion by order entered on October 3, 2016."
In his September 2016 motion to dismiss, the father also asserted that the Grandparent Visitation Act, codified at Ala. Code 1975, § 30-3-4.2 ("the GVA"), was both unconstitutional on its face and as applied. The certificate of service on the father's motion to dismiss listed counsel for the maternal grandmother and the maternal stepgrandfather, counsel for the paternal grandfather and the paternal stepgrandmother, and the guardian ad litem for the children. Nothing in the materials before this court on either of the father's mandamus petitions[2] indicate that the father had served the attorney general with his constitutional challenge to § 30-3-4.2 at that time.
The maternal grandmother and the maternal stepgrandfather had filed a motion seeking temporary visitation with the children. On October 3, 2016, the trial court entered an order stating that the parties had reached an agreement regarding temporary visitation. The order stated that, until the parties submitted a jointly proposed order with other specified visitation arrangements, the maternal grandmother and the maternal stepgrandfather would have visitation with the children for three hours every other Sunday afternoon or six hours every two weeks.
The father answered the maternal grandmother and the maternal stepgrandfather's complaint on October 25, 2016. He also asserted a counterclaim in which he sought a judgment declaring the GVA unconstitutional. The certificate of service of the father's answer and counterclaim indicates that he had sent a copy of the pleading to the attorney general via certified mail.
The trial court held a hearing on November 16, 2016, at which it heard arguments of counsel and, with the consent of the parties, held an in camera interview outside the presence of the parties and their attorneys with I.G. ("the eldest child"). The trial court specifically stated that it would not place the eldest child under oath.
The trial court held an evidentiary hearing on pendente lite visitation on December 2, 2016. The father, the maternal grandmother, and the maternal stepgrandfather testified. The trial court found in its December 23, 2016, order that the testimony established that the maternal grandmother had cared for the children, primarily in the father's home, at least two days a week during most weeks between August 2013 and January 2015. The court determined that the father had informed the *71 maternal grandmother in late December 2014 or early January 2015 that he had made other arrangements for the care of the children. The trial court found that the maternal grandmother had seen the children only six times between January 2015 and the filing of the complaint in August 2016.
Based on those findings, the trial court concluded that the maternal grandmother had proven that she had "established a significant and viable relationship with the children in two ways" because she had established that she had been "the caregiver to the children on a regular basis for at least six consecutive months within the three years preceding the filing" of her complaint, see §§ 30-3-4.2(d)(1) a. and 30-3-4.2(o )(2), and because she had "had frequent or regular contact with the children for at least 12 consecutive months ... within the three years preceding the filing of" her complaint. See §§ 30-3-4.2(d)(1) c. and 30-3-4.2(o )(4). The trial court then concluded that visitation with the maternal grandmother and the maternal stepgrandfather was in the best interest of the children, based on testimony and photographs indicating that the younger two children were happy during visits with the maternal grandmother and the maternal stepgrandfather. The trial court also noted that the children's guardian ad litem had stated his opinion that visitation would be in the best interest of the two younger children and that the guardian ad litem had stated that denial of that visitation "may[,] has been, or will be likely harmful to that relationship and the children." The trial court awarded pendente lite visitation to the maternal grandmother and the maternal stepgrandfather for five hours on alternating Sundays each month and, subject to further recommendations of the guardian ad litem or an agreement of the parties, for "either ... a substantial period every day for one week during the summer" or, "in addition to the regular monthly visits, the maternal grandparents shall have at least six (6) additional visits during the summer of at least five (5) hours each on the first and second Thursdays of the months of June, July, and August."
In the December 23, 2016, order, the trial court set the matter for a trial to be held on August 7, 2017. The trial court also stated:
"For purposes of this Order, the Court finds that the most recently Amended version of [the GVA], which became effective on August 1, 2016, to be constitutional. The father's Motion to Dismiss was based on the argument that the [GVA] as amended is not constitutional. The Court pretermits further analysis of this issue."
The father filed this petition for the writ of mandamus on February 3, 2017. In his petition, the father argues that the trial court's pendente lite grandparent-visitation order should be set aside because, he contends, the trial court failed to accord "special weight to the fundamental right of a fit parent to decide which associations are in the best interest of his or her child," as required by § 30-3-4.2(o ). He also complains that the trial court "conflates two requirements of the statute into one," that the trial court's finding that the maternal grandmother was "the caregiver" under § 30-3-4.2(o )(2) is not supported by the evidence presented, that the trial court erred by relying on "undisclosed nontestimonial information" from the guardian ad litem, and that the evidence does not support the conclusion that visitation is in the best interest of the children. In addition, the father contends that the trial court erred in awarding visitation to the maternal stepgrandfather, who, he says, is not entitled to visitation under the GVA because he is not a "grandparent" based on *72 the definition set out in § 30-3-4.2(a)(1). Finally, the father argues that § 30-3-4.2(o ) is unconstitutional, both on its face and as applied in the present case.
We first consider the father's argument that the trial court erred in awarding pendente lite grandparent visitation to the maternal stepgrandfather because he does not fall within the definition of "grandparent" in § 30-3-4.2(a)(1).[3] Section 30-3-4.2(a)(1) defines "grandparent" as "[t]he parent of a parent, whether the relationship is created biologically or by adoption." The language is plain, and we must "interpret [it] to mean exactly what it says." IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). A stepgrandfather is not the biological or adoptive parent of either of the children's parents. Thus, the maternal stepgrandfather is not within the class of persons who may seek grandparent visitation under the GVA. To the extent that the trial court awarded the maternal stepgrandfather pendente lite visitation, it erred.
We next turn to the father's constitutional arguments. The attorney general has appeared as a respondent and argues that the trial court was, and this court is, without jurisdiction to consider the facial constitutionality of the GVA, or, more specifically, § 30-3-4.2(o ), because the attorney general was not properly served with the father's constitutional challenge, as required by Ala. Code 1975, § 6-6-227, which states, in pertinent part, that, "if the statute ... is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard." See Tucker v. Personnel Bd. of City of Dothan, 644 So.2d 8, 9 (Ala. Civ. App. 1994) (quoting Smith v. Lancaster, 267 Ala. 366, 367, 102 So.2d 1, 2 (1958) ) ("[O]ur Supreme Court has held 'that failure to serve the attorney general "goes to the jurisdiction of the court," that the "absence of jurisdiction is apparent on the face of the record," and that we must take notice of our own want of jurisdiction.' "); and Guy v. Southwest Alabama Council on Alcoholism, 475 So.2d 1190, 1191 (Ala. Civ. App. 1985) ("[W]hen a party challenges the constitutionality of a state statute and fails to serve the attorney general, the trial court has no jurisdiction to decide the constitutional claims and its decree is void."). As noted above, the father first questioned the facial constitutionality of the GVA in his September 2016 motion to dismiss. In October 2016, he filed a counterclaim requesting a judgment declaring the GVA to be unconstitutional. The certificate of service attached to the father's counterclaim contains the following language:
"I hereby certify that I have served a true and correct copy of the foregoing upon the parties or their counsel as listed below via Alacourt or via U.S. Mail, *73 postage prepaid and properly addressed, if so indicated, on October 25, 2016.
"....
"BY CERTIFIED MAIL
Luther Strange, Esq.
Attorney General of Alabama
P.O. Box 300152
Montgomery, AL 36130-0152"
Relying on City of Gadsden v. Cartee, 279 Ala. 280, 281, 184 So.2d 360, 362 (1966), and Town of Warrior v. Blaylock, 271 Ala. 685, 686, 127 So.2d 618, 619 (1961), the attorney general contends that the mailing of a copy of the counterclaim to the attorney general's office is not sufficient to perfect service. In Cartee, the certificate of service of the last amendment to the city's petition indicated that the pleading had been addressed to the attorney general and placed in the mail with the proper postage. 279 Ala. at 281, 184 So.2d at 361. In Blaylock, "the bill pray[ed] that a copy thereof be sent by registered mail to the attorney general." 271 Ala. at 686, 127 So.2d at 619. In its opinion determining that the attorney general had not been properly served, our supreme court stated in Blaylock that
"[w]e are not to be understood as intimating that sending a copy of the bill of complaint to the attorney general by mail, registered or otherwise, would constitute sufficient service on him. The statute provides that 'the attorney-general of the state shall also be served with a copy ...,' and does not provide that a copy be sent to him by mail."
271 Ala. at 686, 127 So.2d at 619. The Cartee court relied on Blaylock to conclude that sending the petition using regular mail was also insufficient to establish proper service on the attorney general. 279 Ala. at 281, 184 So.2d at 362.
Of course, when Cartee and Blaylock were decided, service of process on resident defendants was required to be accomplished through personal service of the summons. Ala. Code 1940 (Recomp. 1958), Tit. 7, § 186; Equity Rules, Rule 5(a), Ala. Code 1940 (Recomp. 1958), Tit. 7, Appendix ("The summons must be served by the sheriff of the county ... upon each defendant personally ...."). In contrast, certified mail is now a permitted form of service on any defendant under Rule 4(i)(2), Ala. R. Civ. P. Thus, we cannot conclude that, under Cartee and Blaylock, certified mail is an insufficient method of service on the attorney general.
However, the materials before us do not indicate that the father complied with the requirements of Rule 4(i)(2) to accomplish proper service by certified mail on the attorney general. "[S]trict compliance with the rules regarding service of process is required." Ex parte Pate, 673 So.2d 427, 429 (Ala. 1995) ; see also Ex parte Shuttleworth, 410 So.2d 896 (Ala. 1981). Rule 4(i)(2) reads as follows:
"(2) Service by Certified Mail.
"(A) When Proper. When the plaintiff files a written request with the clerk for service by certified mail, service of process shall be made by that method. Alternatively, the attorney or party filing the process and complaint may initiate service by certified mail as provided in this rule.
"(B) How Served.
"(i) In the event of service by certified mail by the clerk, the clerk shall place a copy of the process and complaint or other document to be served in an envelope and shall address the envelope to the person to be served with instructions to forward. In the case of an entity within the scope of one of the subdivisions of Rule 4(c), the addressee shall be a person described in the appropriate *74 subdivision. The clerk shall affix adequate postage and place the sealed envelope in the United States mail as certified mail with instructions to forward, return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered. The case number of the case in which the pleading has been filed shall be included on the return receipt. The clerk shall forthwith enter the fact of mailing on the docket sheet of the action and make a similar entry when the return receipt is received.
"(ii) Alternatively, the attorney or party filing the process and complaint or other document to be served may obtain a copy of the filed pleading from the clerk or, if the pleading was filed electronically, use the copy returned electronically by the clerk. The attorney or party shall then place that copy of the process and complaint or other document to be served in an envelope and address the envelope to the person to be served with instructions to forward. In the case of an entity within the scope of one of the subdivisions of Rule 4(c), the addressee shall be a person described in the appropriate subdivision. The attorney or party shall affix adequate postage and place the sealed envelope in the United States mail as certified mail with instructions to forward, return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered. The return receipt shall be addressed to the clerk of the court issuing the process and shall identify the case number of the case in which the pleading has been filed. Upon mailing, the attorney or party shall immediately file with the court an 'Affidavit of Certified Mailing of Process and Complaint.' That affidavit shall verify that a filed copy of the process and complaint or other document to be served has been mailed by certified mail in accordance with this rule."
(Emphasis added.)
Under Rule 4(i)(2), denoting in a certificate of service that a copy of a complaint (or, in this case, a counterclaim) has been sent by certified mail to a defendant does not accomplish service by certified mail. The materials before this court contain neither a notation on the docket sheet by the circuit clerk nor an "Affidavit of Certified Mailing of Process and Complaint" to indicate that service by certified mail was properly accomplished. Based on the materials before this court, and in light of the attorney general's statement that he did not receive proper service of the father's facial constitutional challenge to § 30-3-4.2(o ), we must conclude that the father has not demonstrated that he properly served the attorney general by certified mail. Because the attorney general was not properly served, the trial court lacked, and this court lacks, jurisdiction to decide the father's facial constitutional challenge to the GVA or, more specifically, to § 30-3-4.2(o ).
We can, however, consider the father's argument that § 30-3-4.2(o ) is unconstitutional as applied to him in the present case. "[A]n 'as-applied challenge' is 'a claim that a statute is unconstitutional on the facts of a particular case or in its application to a particular party.' " State v. Adams, 91 So.3d 724, 754 (Ala. Crim. App. 2010) (quoting Black's Law Dictionary 244 *75 (8th ed. 2004)). A party need not serve the attorney general to assert an "as applied" challenge to a statute. Ex parte Squires, 960 So.2d 661, 664-65 (Ala. 2006).
As we begin our analysis of the father's "as applied" challenge to § 30-3-4.2(o ), we recognize that
"we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).... Moreover, just as statutes dealing with the same subject are in pari materia and should be construed together, League of Women Voters [v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974) ], parts of the same statute are in pari materia and each part is entitled to equal weight."
Darks Dairy, Inc. v. Alabama Dairy Comm'n, 367 So.2d 1378, 1380-81 (Ala. 1979). Because of the length of the statute, we will not set out the entire text of the GVA; instead, we will quote those parts necessary for our analysis.
"(a) For the purposes of this section, the following words have the following meanings:
"(1) Grandparent. The parent of a parent, whether the relationship is created biologically or by adoption.
"(2) Harm. A finding by the court, by clear and convincing evidence, that without court-ordered visitation by the grandparent, the child's emotional, mental, or physical well-being has been, could reasonably be, or would be jeopardized.
"....
"(c)(1) There is a rebuttable presumption that a fit parent's decision to deny or limit visitation to the petitioner is in the best interest of the child.
"(2) To rebut the presumption, the petitioner shall prove by clear and convincing evidence, both of the following:
"a. The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation.
"b. Visitation with the petitioner is in the best interest of the child.
"(d) To establish a significant and viable relationship with the child, the petitioner shall prove by clear and convincing evidence any of the following:
"(1)a. The child resided with the petitioner for at least six consecutive months with or without a parent present within the three years preceding the filing of the petition.
"b. The petitioner was the caregiver to the child on a regular basis for at least six consecutive months within the three years preceding the filing of the petition.
"c. The petitioner had frequent or regular contact with the child for at least 12 consecutive months that resulted in a strong and meaningful relationship with the child within the three years preceding the filing of the petition.
"(2) Any other facts that establish the loss of the relationship between the petitioner and the child is likely to harm the child.
"(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner shall prove by clear and convincing evidence all of the following:
"(1) The petitioner has the capacity to give the child love, affection, and guidance.
"(2) The loss of an opportunity to maintain a significant and viable relationship between the petitioner and *76 the child has caused or is reasonably likely to cause harm to the child.
"(3) The petitioner is willing to cooperate with the parent or parents if visitation with the child is allowed.
"(f) The court shall make specific written findings of fact in support of its rulings.
"....
"(o ) Upon filing an action under this section, after giving special weight to the fundamental right of a fit parent to decide which associations are in the best interest of his or her child, the court may, after a hearing, enter a pendente lite order granting temporary visitation rights to a grandparent, pending a final order, if the court determines from the evidence that the petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation, visitation would be in the best interest of the child, and any of the following circumstances exist:
"(1) The child resided with the grandparent for at least six consecutive months within the three years preceding the filing of the petition.
"(2) The grandparent was the caregiver of the child on a regular basis for at least six consecutive months within the three years preceding the filing of the petition.
"(3) The grandparent provided significant financial support for the child for at least six consecutive months within the three years preceding the filing of the petition.
"(4) The grandparent had frequent or regular contact with the child for at least 12 consecutive months within the three years preceding the filing of the petition.
"(p) As a matter of public policy, this section recognizes the importance of family and the fundamental rights of parents and children. In the context of grandparent visitation under this section, a fit parent's decision regarding whether to permit grandparent visitation is entitled to special weight due to a parent's fundamental right to make decisions concerning the rearing of his or her child. Nonetheless, a parent's interest in a child must be balanced against the long-recognized interests of the state as parens patriae. Thus, as applied to grandparent visitation under this section, this section balances the constitutional rights of parents and children by imposing an enhanced standard of review and consideration of the harm to a child caused by the parent's limitation or termination of a prior relationship of a child to his or her grandparent."
§ 30-3-4.2.
As the father contends, § 30-3-4.2(o ) requires that a trial court "giv[e] special weight to the fundamental right of a fit parent to decide which associations are in the best interest of his or her child." In addition, § 30-3-4.2(o ) requires a grandparent to prove that he or she has a significant and viable relationship with the child with whom visitation is sought and that visitation would be in that child's best interest. Finally, a grandparent must establish the existence of one of four circumstances, including that "[t]he grandparent was the caregiver of the child on a regular basis," § 30-3-4.2(o )(2), or that "[t]he grandparent had frequent or regular contact with the child," § 30-3-4.2(o )(4), for specified periods within the three years before the grandparent initiates a grandparent-visitation action under the GVA.
In its December 23, 2016, order, the trial court explained how the maternal grandmother and the maternal stepgrandfather had met the burden required to entitle them to pendente lite grandparent visitation.
*77 The trial court specifically addressed the requirement that the maternal grandmother and the maternal stepgrandfather prove that the requested visitation was in the best interest of the children.
"To rebut the presumption that the father of the children has the sole right to decide with whom his children spend their time, the [maternal grandmother and the maternal stepgrandfather] presented evidence that the maternal grand[mother and the maternal stepgrandfather] had a significant and viable relationship with the children within the time frame stated in the [GVA], and that visitation with the maternal grand[mother and the maternal stepgrandfather] is in the best interests of the children.
"....
"There was testimony that the children had, on rare occasions, spent the night with the maternal grand[mother and the maternal stepgrandfather] and that the maternal grandmother had spent the night in the home of the father on occasion with the children in 2014. The maternal grandmother spent considerable time in 2013 and 2014 caring for the children as noted above. The maternal [step]grandfather also spent time with the children while in the company of the maternal grandmother.
"The [guardian ad litem] reported that the two younger children in his opinion were happy and had enjoyed the time with their maternal grand[mother and the maternal stepgrandfather] during the recent Court-ordered visitations. Many photographs were presented to the Court taken during those recent visits, further supporting the testimony.
"The Court also heard testimony regarding the recent visits of the two younger children with the maternal grand[mother and the maternal stepgrandfather], pursuant to the Court's Order.
"The [guardian ad litem] has reported to the Court that he believes it is in the best interests of the two younger children to have the opportunity for regular visitation with the maternal grand[mother and the maternal steppgrandfather] and not doing so may ha[ve] been or will be likely harmful to that relationship and the children. The [guardian ad litem] further reported that he believes the maternal grand[mother and the maternal stepgrandfather] have shown and are capable of showing love to the children and caring for then during visits.
"The Court finds that the [guardian ad litem's] recommendations, at least as to the two younger children, to be consistent with the testimony and other evidence presented.
"....
"The Court finds the facts meet the requirements stated in the [GVA], to a clear and convincing standard, and that it is in the best interest of the minor children for the maternal grand[mother and the maternal stepgrandfather] to have regular visitation with the children."
The father's challenge to the constitutionality of § 30-3-4.2(o ) as applied in the present case is based on his contention that the trial court awarded pendente lite visitation without giving "special weight" to his decisions regarding visitation and instead based its decision solely on its determination that visitation would be in the best interest of the children. As he correctly contends, allowing a trial court to award grandparent visitation over the objection of a fit parent based solely on the trial court's determination that it can make a "better" decision for the child has been held to be an unconstitutional exercise of the state's power.
*78 Weldon v. Ballow, 200 So.3d 654, 669 (Ala. Civ. App. 2015) (quoting Troxel v. Granville, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion)) (explaining that Troxel"very clearly stated that the presumption could not be overcome 'simply because a state judge believes a "better" decision could be made' "). However, the father has misread § 30-3-4.2(o ), which does not prescribe that a simple "best interest" analysis be utilized when pendente lite grandparent visitation is being considered.
Although it is not immediately apparent from the language used in § 30-3-4.2(o ), the best-interest analysis set out in the GVA requires a showing of actual or reasonably expected harm to the child. That is, the GVA requires a grandparent seeking to prove that grandparent visitation is in the best interest of a child to show, by clear and convincing evidence, all three of the following:
"(1) The petitioner has the capacity to give the child love, affection, and guidance.
"(2) The loss of an opportunity to maintain a significant and viable relationship between the petitioner and the child has caused or is reasonably likely to cause harm to the child.
"(3) The petitioner is willing to cooperate with the parent or parents if visitation with the child is allowed."
§ 30-3-4.2(e) (emphasis added). Section 30-3-4.2(a)(2) defines "harm" as "[a] finding by the court, by clear and convincing evidence, that without court-ordered visitation by the grandparent, the child's emotional, mental, or physical well-being has been, could reasonably be, or would be jeopardized." In addition, § 30-3-4.2(c)(1) acknowledges that a parents' decision regarding visitation is presumed to be in the best interest of his or her child. In order to rebut that presumption, § 30-3-4.2(c)(2) requires clear and convincing proof that the grandparent and the child have a "significant and viable relationship," § 30-3-4.2(c)(2) a, and that the requested "[v]isitation ... is in the best interest of the child." § 30-3-4.2(c)(2) b.
Based on the terms used in the GVA, it is apparent that the legislature intended that the term "best interest" as used in grandparent-visitation actions brought under the GVA include a consideration of harm to the child if such visitation were not permitted. Because the trial court in the present case determined that the maternal grandmother had established that grandparent visitation would be in the children's best interest, the trial court necessarily determined that the maternal grandmother had proven that the children either had or would suffer harm if the relationship was not resumed or maintained by a pendente lite grandparent-visitation order. The trial court stated as much in its order when it recounted the guardian ad litem's belief that "it is in the best interests of the two younger children to have the opportunity for regular visitation with the maternal grand[mother and the maternal steppgrandfather] and not doing so may ha[ve] been or will be likely harmful to that relationship and the children" and commented that the guardian ad litem's beliefs were consistent with the evidence presented.
The father relies on J.W.J. v. P.K.R., 976 So.2d 1035 (Ala. Civ. App. 2007), to support his argument that the pendente lite visitation award should be set aside because of the failure of the trial court to give his decision regarding visitation "special weight." In J.W.J., this court considered whether the Madison Circuit Court had given "appropriate presumptive effect to ... visitation decisions" of J.W.J., Jr., the child's father, when it awarded grandparent visitation to P.K.R. and P.H.R. ("the grandparents") under former *79 Ala. Code 1975, § 30-3-4.1 (repealed). J.W.J., 976 So.2d at 1042-43. J.W.J., Jr., argued that the circuit court had not afforded him the presumption that his decisions regarding visitation were in the best interest of the child. Id. at 1041. We noted that, although it had entered a "very detailed, six-page order," "the circuit court did not indicate that it gave any greater weight to [J.W.J., Jr.'s] determination than it did the other factors it considered." Id. Thus, this court concluded, the circuit court had applied a best-interest analysis to make an independent decision regarding the propriety of grandparent visitation, which violated the due-process rights of J.W.J., Jr. Id. at 1042-43.
Like the circuit court in J.W.J., the trial court in the present case did not indicate that the father's decision regarding visitation was presumed to be correct. Although it mentioned a "presumption," the trial court characterized the father's fundamental right to make decisions regarding his children as a presumption that could be rebutted. The trial court also failed to mention that it afforded the father's decision regarding visitation any special weight. However, the trial court in the present case, unlike the circuit court in J.W.J., did not rely solely on a best-interest analysis to independently determine that an award of pendente lite visitation was appropriate in this case. We cannot agree with the father that the trial court's order, although devoid of reference to any special weight given to the father's decisions, is fatally flawed as was the judgment of the circuit court in J.W.J. Based on our review of the GVA and the trial court's pendente lite grandparent-visitation order, we conclude that the trial court included in its best-interest analysis under § 30-3-4.2(o ) the heightened requirement of harm set out in § 30-3-4.2(a)(2).
That being said, however, we agree with the father that the evidence presented at the December 2, 2016, hearing does not support the conclusion that grandparent visitation is in the children's best interest, as that term is used in the GVA. To establish that visitation is in the child's best interest, a grandparent must demonstrate by clear and convincing evidence, among other things, that "[t]he loss of an opportunity to maintain a significant and viable relationship between the petitioner and the child has caused or is reasonably likely to cause harm to the child." § 30-3-4.2(e)(2). The contours of the harm sufficient to jeopardize a child's emotional, mental, or physical well-being are not set out in the statute, and, because the GVA is the first grandparent-visitation statute of this state to contain an explicit requirement of harm, we have no Alabama caselaw to aid us in interpreting and applying § 30-3-4.2(e)(2).
However, we are not without guidance. The GVA is based, in significant part, on the Arkansas statute governing grandparent visitation, Ark. Code Ann., § 9-13-103. Alabama Comment to § 30-3-4.2. Section 9-13-103(e)(2), much like our § 30-3-4.2(e)(2), requires that, to establish that grandparent visitation is in the best interest of a child, a grandparent seeking visitation present, among other things, evidence indicating that "[t]he loss of the relationship between the petitioner and the child is likely to harm the child." The Arkansas Court of Appeals has had the opportunity to consider the requirement that a grandparent seeking visitation prove that the child will be harmed if visitation is not awarded. See Shores v. Lively, 492 S.W.3d 81 (Ark. App. 2016) ; Harrison v. Phillips, 422 S.W.3d 188 (Ark. App. 2012) ; Favano v. Elliott, 422 S.W.3d 162 (Ark. App. 2012) ; Bowen v. Bowen, 421 S.W.3d 339 (Ark. App. 2012) ; and Brandt v. Willhite, 98 Ark. App. 350, 255 S.W.3d 491 (2007).
*80 In Bowen, the Arkansas Court of Appeals explained that "in order to overcome the presumption that a fit parent is necessarily acting in his children's best interest, our statute requires both a showing of a substantial grandparent-grandchild relationship, and a showing that a denial of that relationship 'is likely to harm the child.' " 421 S.W.3d at 344. The court noted that "there is a substantial difference between the existence of a relationship benefiting a child and the denial of that relationship harming a child." Id.
The Bowen court reversed the award of grandparent visitation under the Arkansas statute, stating:
"In order to comply with the strictures of the statute, the burden is firmly placed on the grandparents to prove visitation is in the grandchild's best interest. This best interest of the child cannot be proved simply by showing that a meaningful or substantial relationship existed and the grandparents desired to further that relationship. Furthermore, a trial court cannot override a fit parent's wishes based solely on its personal view of the children's best interests. In re Guardianship of S.H., ... 409 S.W.3d [307,] 313-17 [ (Ark. 2012), overruled on other grounds, In re Guardianship of W.L., 467 S.W.3d 129 (Ark. 2015) ].
"In this case, the trial court substituted a benefit analysis for our required statutory presumption in favor of the parent's decision. In so doing, the trial court basically required [the father] to prove that visitation would be harmful, losing sight of the fact that it is the parent who has a right to uninterrupted custody."
Id. at 346 (first emphasis added).
In Favano, the court explained that testimony indicating that a parent believed that a relationship with a grandparent would be in the child's best interest or otherwise beneficial to a child is insufficient, alone, to permit a trial court to conclude that court-ordered grandparent visitation is in the best interest of the child under the Arkansas statute. 422 S.W.3d at 168. Although the mother in Favano had indicated that the child's best interest would be furthered by contact with the grandparent, she had stated that court-ordered visitation would not be in the child's best interest. Id. Although the trial court in Favano specifically concluded that visitation would be in the child's best interest, the trial court's judgment had not indicated what harm might befall the child if her relationship with her grandparent were to be lost. Id. The testimony before the trial court in Favano indicated that the child was doing well and that the child was not suffering any harm as a result of the lack of a relationship between her and the grandparent. Id. The lack of evidence relating to the harm that the child might suffer and the failure of the trial court to address the harm requirement resulted in the reversal of the award of grandparent visitation. Id. at 169.
Turning now to the present case, we note that the word "harm" does not appear in the testimony at the December 2, 2016, hearing. The father testified that he had believed that allowing the maternal grandmother to care for the children was "the right thing to do" and that it was important for the children to know the maternal grandmother and their other maternal relatives. However, the father testified that the eldest child had been distraught before the visitations that occurred under the temporary order and that she had often cried both before and after those visits. The guardian ad litem stated on the record that he "was opposed to visitation" with the eldest child because of some things that he discovered about the visits that had occurred.
*81 The maternal grandmother testified that one of the younger children had said that she missed the maternal grandmother and that the children, including the eldest child, were happy and had enjoyed their visits. In addition, the trial court also noted that the eldest child had indicated that she missed her grandmother, that she wanted to visit her, but that she wanted any visitation to be flexible. The trial court indicated that the eldest child had said that she was concerned about her siblings and had indicated that an incident that occurred at one of the visitations had been "stressful."
The trial court also relied on the recommendation of the guardian ad litem to support its conclusion that an award of visitation would be in the best interest of the younger children and, specifically, that the younger children would suffer harm if visitation was not awarded. The guardian ad litem stated on the record that he had observed nothing during a visitation to indicate that the younger children were "scared [or] intimidated." He also said that he had not witnessed "anything on the detrimental side for these children to have exposure to the [maternal grandmother and the maternal stepgrandfather]."
We have not forgotten that the father complains that the trial court improperly considered the recommendation of the guardian ad litem. Relying on Ex parte Dean, 137 So.3d 341 (Ala. Civ. App. 2013), and Ex parte R.D.N., 918 So.2d 100 (Ala. 2005), the father argues that the trial court erroneously relied on " 'reported' facts and opinions of the [guardian ad litem] which were [neither] in evidence [nor] in a report in the record." Indeed, a trial court's reliance on ex parte communications between the court and a guardian ad litem violates a party's due-process rights. Ex parte R.D.N., 918 So.2d at 105. In addition, this court has determined that a guardian ad litem's response to a parent's motion could not be used as evidence in an award of pendente lite custody. Ex parte Dean, 137 So.3d at 347-48. We note, however, that the guardian ad litem in the present case stated his recommendation in open court on the record after attending the trial, hearing the testimony, and questioning the witnesses and that his recommendation was given without objection by either party, facts which distinguish this case from Ex parte Dean and Ex parte R.D.N. See Cooper v. Cooper, 160 So.3d 1232, 1243 (Ala. Civ. App. 2014) (noting that "the guardian ad litem's recommendation was presented to all parties at trial and the parties were afforded the opportunity to contest the recommendation," which distinguished the case from Ex parte R.D.N. ); K.U. v. J.C., 196 So.3d 265, 273 n.3 (Ala. Civ. App. 2015) (distinguishing Ex parte R.D.N., 918 So.2d at 103, because the guardian ad litem's recommendation was not made ex parte and no party objected to the submission of the written recommendation); and C.J.L. v. M.W.B., 879 So.2d 1169 (Ala. Civ. App. 2003) (distinguished in Ex parte R.D.N. because "the recommendations of the guardian ad litem were before the court and were contested during the trial on the merits," as opposed to being submitted to the court ex parte).
Although we have concluded that the recommendation of the guardian ad litem stated on the record was properly considered, we would be remiss if we did not point out that the trial court's order appears to have misstated the recommendation made in open court. Contrary to the assertion in the order, the guardian ad litem did not state, at least not on the record, that he thought harm might befall the younger children if visitation was not ordered; instead, he said that he had seen nothing during an observed visit to indicate *82 that the visitation was detrimental to the children. Thus, if an opinion like that recounted in the order-that harm might befall the younger children if visitation were not awarded-was offered by the guardian ad litem, it appears that the guardian ad litem communicated it ex parte, and, in that case, the trial court erred in relying upon any such opinion or recommendation. Ex parte R.D.N., 918 So.2d at 105.
When the statements of the guardian ad litem that appear of record are considered, the evidence before the trial court demonstrates that one of the two younger children had stated that she missed the maternal grandmother and that the eldest child had expressed a similar sentiment and a desire to have flexible visits with the maternal grandmother. However, the guardian ad litem had opined that visitation between the eldest child and the maternal grandmother was not appropriate at the time of the December 2, 2016, hearing. The trial court could also have concluded that the children had enjoyed their visits with the maternal grandmother based on the maternal grandmother's testimony. The testimony of the father indicated that he believed that maintaining the children's relationship with the maternal grandmother was important. In addition, the evidence supports the trial court's unchallenged conclusion that the maternal grandmother "had frequent or regular contact with the child[ren]" during the relevant period under § 30-3-4.2(o )(4), thus giving rise to one of the four circumstances required to be shown before pendente lite visitation can be awarded.[4]
However, proof that a grandparent has a close, beneficial relationship with a child is not equivalent to proof that the child will suffer harm if that relationship is limited or terminated. Bowen, 421 S.W.3d at 344. Furthermore, evidence of a beneficial relationship alone fails to rebut the presumption in favor of a fit parent's decision. Id. at 346. Even a fit parent's admitted belief that a relationship between the grandparent and the child is valuable is not sufficient to rebut that presumption. Favano, 422 S.W.3d at 168. A trial court's award of visitation without the requisite showing of harm to overcome the presumption in favor of a fit parent's visitation decision ultimately places on the parent the burden to prove that visitation is not in the child's best interest, see id., which runs afoul of the prohibition in Troxel against allowing a trial court to determine whether, in its estimation, it could make a better decision about visitation than did a fit parent. Troxel, 530 U.S. at 73.
Based on the evidence adduced at the December 2, 2016, hearing, we cannot conclude that the maternal grandmother presented clear and convincing evidence indicating that "[t]he loss of an opportunity to maintain a significant and viable relationship between the petitioner and the child has caused or is reasonably likely to cause harm to the child." § 30-3-4.2(e)(2). The *83 trial court's award of pendente lite grandparent visitation is therefore based solely on a determination that, in the trial court's opinion, the children should visit with the maternal grandmother because she desires to maintain a relationship with them. That is, the trial court merely substituted its decision about the children's best interest for the father's, which it cannot do. Thus, we conclude that the trial court's award of pendente lite visitation under § 30-3-4.2(o ) is not supported by sufficient evidence and therefore unconstitutionally infringes on the fundamental right of the father to control the associations of the children.
The father has demonstrated a clear legal right to a portion of the relief that he seeks. Accordingly, we grant the father's petition for the writ of mandamus, and we order the trial court to vacate its December 23, 2016, order awarding visitation to the maternal grandmother and the maternal stepgrandfather and to enter an order denying pendente lite visitation to the maternal grandmother. As we have already concluded and explained above, any future award of pendente lite or permanent grandparent visitation may not include an award of visitation to the maternal stepgrandfather, who, by definition, is not a person who may seek visitation rights under the GVA. In addition, and as also explained above, we lack jurisdiction to consider the father's facial challenge to the constitutionality of the GVA or, more specifically, to § 30-3-4.2(o ), and this opinion should not be construed to have stated any opinion on that issue. We pretermit the other issues raised by the father at this time because they are not necessary for the resolution of this petition.
PETITION GRANTED; WRIT ISSUED.
Pittman, J., concurs.
Moore, J., concurs in the result, without writing.
Donaldson, J., concurs in part, concurs in the result in part, and dissents in part, with writing, which Thompson, P.J., joins.
DONALDSON, Judge, concurring in part, concurring in the result in part, and dissenting in part.
This court has held that a petition for a writ of mandamus is an available means to review a pendente lite order granting visitation rights. See, e.g., Ex parte Dean, 137 So.3d 341, 344 (Ala. Civ. App. 2013).
" 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' "
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala. 2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995) ). A writ of mandamus should be "issued only in rare circumstances." Ex parte United Equitable Life Ins. Co., 595 So.2d 1373, 1374 (Ala. 1992). "Mandamus relief ... is rarely appropriate, and is limited to those cases in which the party seeking relief has demonstrated a compelling reason for that relief." Ex parte Exxon Corp., 725 So.2d 930, 931 (Ala. 1998). "[I]f there is a doubt of the necessity or propriety, mandamus will not lie." Folmar v. Brantley, 238 Ala. 681, 685, 193 So. 122, 125 (1939). Traditionally, the issuance of the writ of mandamus was viewed not as a matter of right, but as a matter of discretion of the appellate court. See, e.g., State ex rel. Tallapoosa Cty. v. Butler, 227 Ala. 212, 215-16, 149 So. 101, 104 (1933). Thus, we should give consideration only to those specific issues a petitioner presents that *84 are cogently supported by compelling authority.
I agree that Michael Gentry ("the father"), the petitioner in this mandamus proceeding, has established that he has a "clear legal right" to the vacation of that portion of the trial court's order permitting pendente lite visitation with Ben Schillaci ("the maternal stepgrandfather") because the Grandparent Visitation Act, Ala. Code 1975, § 30-3-4.2 ("the GVA"), does not provide for visitation by a stepgrandparent. I therefore concur with that portion of the main opinion.
I also agree that the father cannot maintain a facial constitutional challenge to the GVA at this juncture because of the insufficiency of service on the attorney general. I therefore concur with that portion of the main opinion. In my view, the father's constitutional argument does not include a sufficient assertion that the application of the GVA is unconstitutional under the particular facts of this case or under the father's particular circumstances. As a result, in my view, the father has not presented an argument regarding the constitutionality of the GVA as applied in this case. Moreover, even if the father has made such an argument, there is no argument in the petition that he was excused from serving the attorney general in compliance with § 6-6-227, Ala. Code 1975, in order to challenge the constitutionality of the GVA as applied. See Ex parte J.W.B., 230 So.3d 783, 792 (Ala. 2016) (footnote omitted)(noting, in part, that the petitioner seeking certiorari review in that case "did not explain why his constitutional argument did not require compliance with § 6-6-227, Ala. Code 1975. See Landers v. O'Neal Steel, Inc., 564 So.2d 925, 926 (Ala. 1990), and Dodd v. Burleson, 932 So.2d 912, 918 (Ala. Civ. App. 2005)," in holding that the "as applied" constitutional argument was not preserved for appellate review). The father therefore has not established a clear legal right to the vacation of the trial court's order on constitutional grounds. See Ex parte Brooks Ins. Agency, 125 So.3d 706, 708 (Ala. 2013) (" ' " 'The burden of establishing a clear legal right to the relief sought rests with the petitioner.' " ' " (quoting Ex parte McNeese Title, LLC, 82 So.3d 670, 673 (Ala. 2011), quoting in turn Ex parte Dangerfield, 49 So.3d 675, 680 (Ala. 2010), quoting in turn Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala. 2007) )). "It is not the duty of the appellate court to make arguments for the parties, nor is it the appellate court's duty to conduct the parties' legal research." Woods v. Federated Mut. Ins. Co., 31 So.3d 701, 706 (Ala. Civ. App. 2009). See also Ex parte Showers, 812 So.2d 277, 281 (Ala. 2001) (observing that the requirement of providing the appellate court with specific authority for the relief sought in a brief supporting a petition for a writ of mandamus is "even more compelling than ... in a brief on appeal"). Accordingly, I would not reach or discuss the constitutionality of the GVA as applied in this case considering the father's mandamus petition, and I dissent to the extent the main opinion grants the petition on this issue.
I agree that the petition should not be granted with respect to the father's allegations of impropriety regarding the consideration of the guardian ad litem's recommendations because the record does not establish that any improper ex parte communications occurred. I, therefore, concur in the result with respect to that portion of the main opinion.
As to all other grounds of relief, I do not find that the father has established that he has a "clear legal right" to relief or that there is an "imperative duty" of the trial court to act in the manner sought. The *85 father argues that the trial court failed to give special weight to his fundamental rights as a fit parent because, he asserts, the trial court's analysis lacks a clear indication that it assigned special weight to the presumption that his decision was in the children's best interest. Although the trial court's order does not specifically mention a "special weight" given to the father's fundamental right as a parent, the analysis in the order amounts to more than a simple best-interest analysis, and I see no indication that the trial court did not assign special weight to the father's stance against visitation. The father also argues that the trial court conflated the GVA's requirements for granting pendente lite visitation. In my view, a reading of the trial court's order that considers all the factual findings recited by the trial court does not support the father's contention, at least not for the purpose of issuing the extraordinary writ of mandamus for violation of a clear legal right.
Although I do not necessarily disagree with the legal analysis that superimposes the "reasonably likely to cause harm" required finding in § 30-3-4.2(e)(2) to the best-interest standard within the pendente lite visitation provision in § 30-3-4.2(o ), the father never makes the argument that there is insufficient evidence of harm to support the trial court's finding regarding the children's best interest. In fact, the word "harm" is not found in the mandamus petition. The father merely offers evidence that, he asserts, shows that pendente lite visitation is not in the best interest of the children. The parties, however, presented conflicting evidence regarding the children's best interest. None of the evidence required the trial court to find that pendente lite visitation was not in the best interest of the children. Therefore, the father has not established that the trial court exceeded its discretion in granting Nancy Schillaci ("the maternal grandmother") pendente lite visitation. See Cale v. Littleton, 631 So.2d 1036, 1038 (Ala. Civ. App. 1993) ("When the evidence is in dispute, the trial court is free to choose which evidence it believes and is responsible for solving any conflicts.").
In summary, the father met the requirements for the issuance of the extraordinary writ of mandamus only as to the maternal stepgrandfather's pendente lite visitation. Therefore, I respectfully dissent insofar as the main opinion issues the writ requiring the vacation of the portion of the trial court's order granting pendente lite visitation to the maternal grandmother.
Thompson, P.J., concurs.

The paternal grandfather and the paternal stepgrandmother have dismissed their complaint and are no longer parties to the action in the trial court or in this court.

We have taken judicial notice of the petition, the answer, and the accompanying materials from the father's previous mandamus proceeding. See Ex parte Siderius, 118 So.3d 712, 714 n.1 (Ala. Civ. App. 2013) ; see also Morrow v. Gibson, 827 So.2d 756, 762 (Ala. 2002) (quoting Federal Deposit Ins. Corp. v. Equitable Life Assurance Soc'y of the United States, 289 Ala. 192, 194, 266 So.2d 752, 753 (1972) ) (" 'This court takes judicial notice or has judicial knowledge of contents of its records with reference to its previous consideration of litigation presently before it.' ").

Contrary to the assertion in the answer of the maternal grandmother and the maternal stepgrandfather, this court did not "previously adjudicate[ ]" that the maternal stepgrandfather was a proper plaintiff. Instead, we specifically held in Ex parte Gentry that the issue could not be reached because the father's petition had been untimely filed with respect to the trial court's denial of his motion to dismiss the claims of the maternal stepgrandfather. 228 So.3d at 1021. In any event,
" 'the denial [of a petition for a writ of mandamus] does not operate as a binding decision on the merits.' R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala. 1994). '[T]he denial of relief by mandamus does not have res judicata effect.' Cutler v. Orkin Exterminating Co., 770 So.2d 67, 69 (Ala. 2000) ; Jack Ingram Motors, Inc. v. Ward, 768 So.2d 362 (Ala. 1999) ; Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167 (Ala. 1999)."
Ex parte Shelton, 814 So.2d 251, 255 (Ala. 2001).

The father contests the trial court's conclusion that the maternal grandmother proved that she was "the caregiver" under § 30-3-4.2(o )(2). However, because the maternal grandmother had to prove the existence of only one of the four circumstances under § 30-3-4.2(o ), and because the father does not challenge the trial court's conclusion that the maternal grandmother proved that she had had frequent and regular contact with the children during the relevant period, we need not determine whether the trial court properly concluded that the maternal grandmother was "the caregiver" to resolve the father's petition. See Fogarty v. Southworth, 953 So.2d 1225, 1231 (Ala. 2006) (explaining that the failure to argue one of multiple bases for a judgment results in a waiver of any argument that the judgment is erroneous on that omitted basis).